## UNITED STATES v. LEFKOWITZ ET AL.

No. 466.   Argued February 19, 23, 1932.—Decided April 11, 1932.

*Solicitor General Thacher,* with whom *Assistant Attorney General Youngquist,* and *Messrs. John J. Byrne* and *Wilbur H. Friedman* were on the brief, for the United States.

*Mr. David P. Siegel,* with whom *Mr. Milton B. Season-
wein* was on the brief, for respondents.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The question is whether searches and seizures claimed by the Government to have been made as lawfully inci-

dent to the arrest of respondents on a warrant for conspiracy to violate the National Prohibition Act transgressed their rights under the Fourth and Fifth Amendments.

January 12, 1931, a prohibition agent complained to a United States commissioner in the southern district of New York that commencing June 21, 1930, and continuing to the time of making the complaint Henry Miller (meaning respondent Lefkowitz), Jane Doe (meaning respondent Paris), and another person called Richard Doe did conspire to sell, possess, transport, furnish, deliver and take orders for intoxicating liquor contrary to the National Prohibition Act. The complaint alleged it was a part of the conspiracy that from room 604 at 1547 Broadway defendants should solicit orders for liquor, have it delivered by express companies or other carriers, collect for it and share the proceeds. It alleged certain overt acts but they have no significance upon the question under consideration. The allegations of the complaint show that the complaining witness had knowledge and information of facts amply sufficient to justify the accusation.

The commissioner issued his warrant, to which was attached a copy of the complaint, commanding the marshal and his deputies to arrest defendants. It was given to a deputy marshal for execution and he, the complaining witness and three other prohibition agents, went to room 604. The room was about ten feet wide and twenty feet long and was divided by a partition. In its outer portion, there were a stenographer's desk used by respondent Paris, a towel cabinet and a waste basket; and in the inner part another desk and basket. When the deputy marshal and agents entered, Lefkowitz was in the room. The deputy marshal arrested him, and thereupon one of the prohibition agents searched and took from his person various papers and other things all of which were given to the deputy marshal and later turned over to the assistant United States attorney. The agents opened all the

drawers of both desks, examined their contents, took therefrom and carried away books, papers and other articles.[1] They also searched the towel cabinet and took

[1] From the outer desk were taken:

1. Black leather covered loose-leaf note book, containing alphabetical list of names and addresses.

2. An envelope marked room 604, 1547 Broadway, New York City, containing a 1929 New York State motor vehicle registration certificate 5 Y–2555, issued to Milton Hordish, 635 Kelly Street, Bronx, N. Y., for a 1929 Nash sedan.

3. A bill or statement amounting to $25 addressed to Herman Bernstein, c/o Bernstein & Lefkowitz, 1547 Broadway, New York City, apparently sent by doctors whose names appear on the statement.

4. Business card bearing the name of Dave Scherl, giving his address and telephone number and residence telephone number.

5. A number of business cards reading as follows:

Dan Lefkowitz       Herman Bernstein

LEFKOWITZ & BERNSTEIN

1547 Broadway

New York City

Chickering 4–8928       Room 604

6. About 25 sheets of typewriter paper with the heading thereon of " William Salmon, 1547 Broadway, room 604."

7. About 75 envelopes addressed to various persons throughout the United States, some of which contained undated letters bearing the typewritten signature " William Salmon " to the effect that he had made his yearly change of name from " Henry Miller " to " William Salmon " and that he had received a new stock of merchandise that was for sale.

8. A cardboard covered loose-leaf binder, containing an alphabetical typewritten list of names and addresses.

9. A stenographer's note book and text book.

10. Three raffle books.

From the inner desk were taken:

1. Bottle partly full of alcohol (not shown to be intended or fit for beverage).

2. Telephone address book containing names of persons and telephone numbers.

3. Business card.

4. Blank order book with some of the slips torn out.

5. Several business cards of Bernstein & Lefkowitz.

papers from it.[2]   There was no breaking, as the desks and cabinet were not locked.   They also took the contents of the baskets and later pasted together pieces of papers found therein.[3]   Respondent Paris came in while the room was being searched, and the deputy marshal arrested her.   All the searches and seizures were made without a search warrant.   The prohibition agents delivered to the special agent in charge all the things taken from the desks, cabinet and baskets.   And, until delivered to the assistant United States attorney after Lefkowitz applied to the court for their suppression and return, they were held by the agent in charge for use in making further investigations concerning the conspiracy referred to in the complaint.

January 21, 1931, the district court on the application of Lefkowitz issued an order to show cause, why the court

---

[2] Several typewritten loose leaf sheets unbound bearing names and addresses of numerous people throughout the United States.

[3] The writings made by pasting together pieces of paper taken from the baskets were:

Edison Company electric light bill from October 31 to December 3, 1930, for room 604 at 1547 Broadway, reading No. 6223, bill addressed to Herman Bernstein at 1547 Broadway.

Edison Company electric light bill from December 3, 1930, to January 5, 1931, for room 604 at 1547 Broadway, reading No. 6248, bill addressed to Herman Bernstein at 1547 Broadway.

Unsigned letter from Lefkowitz & Bernstein, 1547 Broadway, to L. Lieberman, 34 E. 12th Street, New York City, for merchandise delivered, $80.

Some 32-odd salesmen's order slips for intoxicating liquor with customers' names and addresses.

N. Y. Telephone Co. receipt No. 6225 dated January 8, 1931, acknowledging having received from Daniel Lefkowitz sum of $14.26 for telephone service, Chic. 4–8928.

A pencil memorandum containing names with amounts set after the respective names, some of these names being Myers, Gordon, French, and K.

A pencil memorandum containing names with amounts set after the names, one of them being Dan, $537, the total amount of the memorandum being $1,497.95.

should not make an order for the suppression of evidence obtained by reason of the search of the room and for the return of all the books, papers and other things belonging to Lefkowitz. With the exception of some things that the prosecuting attorney did not wish to retain as evidence and which he had returned to Lefkowitz before the hearing, all the papers and articles seized were produced and submitted to the court. The Government submitted, in opposition to respondents' motions, affidavits of its attorney, the deputy marshal and three of the four prohibition agents.

The district court denied respondents' motions. It construed the complaint to charge felony under § 37 of the Criminal Code defining conspiracy and § 21 of the National Prohibition Act defining nuisance; held that each of the papers seized was within the meaning of §§ 21 and 22, kept and used to maintain a nuisance; said that " it is enough if the conspiracy was there or the petitioners or their associates had any of them gathered in the room to conduct the conspiracy or do any act to effect its object "; that " it might well follow that, in the sense of the word as used in the *Carroll* case, [267 U. S. 132] the seized papers were contraband "; and that " it is not necessary, however, to determine that, for the reason that, at least within the *Marron* case [275 U. S. 192] all the papers were but usual and ordinary means of carrying on a business of the character presented here." 47 F. (2d) 921.

The Circuit Court of Appeals reversed. 52 F. (2d) 52. It found that the search of the person of Lefkowitz was lawful and that the things taken might be used as evidence against him; held that the things seized when the office and furniture were explored did not belong to the same class; referred to " the firmly rooted proposition that what are called general exploratory searches throughout premises and personal property are forbidden," and said that it did not matter " whether the articles of personal property

opened and the contents examined are numerous or few, the right of personal security, liberty, and private property is violated if the search is general, for nothing specific, but for whatever the containers may hide from view, and is based only on the eagerness of officers to get hold of whatever evidence they may be able to bring to light. . . . Such a search and seizure as these officers indulged themselves in is not like that in *Marron* v. *United States* . . . where things openly displayed to view were picked up by the officers and taken away at the time an arrest was made. The decision that does control is *Go-Bart Co.* v. *United States,* 282 U. S. 344. Indeed, this case differs in its essential facts from that one so slightly that what is said in that opinion in characterizing the search made will apply with equal force to this one, which must accordingly be held unreasonable."

The Government maintains that the facts and circumstances set forth in the affidavits submitted by it constitute a sufficient showing not only that the arrests were lawfully made on a valid warrant for the offense charged in the complaint but also that, without regard to the warrant, the arrests were justified as having been made for a felony by officers believing upon probable cause that respondents committed it and that when arrested they were actually engaged in the commission of crime. And it argues that, since the arrests were lawful, the search of the place where they were made was lawful, and that, having the right to search the premises, the officers were bound to do it thoroughly.

It is clear that respondents were arrested in the proper execution of the warrant, and not by officers acting without a warrant merely upon probable cause to believe that respondents were guilty of a felonious conspiracy. The offense charged involved the use of the room only to solicit orders for liquor, to cause it to be delivered, to collect for it and divide proceeds. There is nothing in

the record to support the claim that, at the time of the arrest, the offense for which the warrant issued or any other crime was being committed in the presence of the officers. It cannot be claimed that they saw conspiracy being committed or that any understanding, agreement or combination was being had, made or formed in their presence. *Go-Bart Co.* v. *United States, supra,* 357. The maintenance of a nuisance or conspiracy to maintain one is not involved. The complaint did not attempt or purport to charge either. It did not allege that the room was a place where liquor was or ever had been manufactured, sold, kept or bartered or that it contained fixtures or other things essential or intended to be used for the sale. of liquor to be consumed on the premises or otherwise. The mere soliciting of orders from the room in connection with the other uses alleged in the complaint is not sufficient to constitute the maintenance of nuisance therein. See §§ 18, 21 and 22, National Prohibition Act, 27 U. S. C., §§ 30, 33 and 34. *Miller.* v. *United States,* 300 Fed. 529, 535. *Schechter* v. *United States,* 7 F. (2d) 881. Cf. *Todd* v. *United States,* 48 F. (2d) 530, 532. The facts and circumstances stated in the affidavits of the prohibition agents do not support but are inconsistent with and negative the assertions therein contained to the effect that respondents were arrested while committing the crime of conspiracy or nuisance.

The only question presented is whether the searches of the desks, cabinet and baskets and the seizures of the things taken from them were reasonable as an incident of the arrests. And that must be decided on the basis of valid arrests under the warrant. Save as given by that warrant and as lawfully incident to its execution, the officers had no authority over respondents or anything in the room. The disclosed circumstances clearly show that the prohibition agents assumed the right contemporaneously with the arrest to search out and scru-

tinize everything in the room in order to ascertain whether the books, papers or other things contained or constituted evidence of respondents' guilt of crime, whether that specified in the warrant or some other offense against the Act. Their conduct was unrestrained. The lists printed in the margin show how numerous and varied were the things found and taken.

The Fourth Amendment forbids every search that is unreasonable and is construed liberally to safeguard the right of privacy. *Byars* v. *United States,* 273 U. S. 28, 32. Its protection extends to offenders as well as to the law abiding. *Weeks* v. *United States,* 232 U. S. 383. *Agnello* v. *United States,* 269 U. S. 20, 32. The authority of officers to search one's house or place of business contemporaneously with his lawful arrest therein upon a valid warrant of arrest certainly is not greater than that conferred by a search warrant issued upon adequate proof and sufficiently describing the premises and the things sought to be obtained. Indeed, the informed and deliberate determinations of magistrates empowered to issue warrants as to what searches and seizures are permissible under the Constitution are to be preferred over the hurried action of officers and others who may happen to make arrests. Security against unlawful searches is more likely to be attained by resort to search warrants than by reliance upon the caution and sagacity of petty officers while acting under the excitement that attends the capture of persons accused of crime. *United States* v. *Kirschenblatt,* 16 F. (2d) 202, 203. *Go-Bart Co.* v. *United States, supra,* 358.

Respondents' papers were wanted by the officers solely for use as evidence of crime of which respondents were accused or suspected. They could not lawfully be searched for and taken even under a search warrant issued upon ample evidence and precisely describing such things

and disclosing exactly where they were. *Gouled* v. *United States,* 255 U. S. 298, 310.

These searches and seizures are to be distinguished from the seizure of a ledger and some bills that was sustained in the *Marron* case. There, prohibition officers lawfully on the premises searching for liquor described in a search warrant, arrested the bartender for crime openly being committed in their presence. He was maintaining a nuisance in violation of the Act. The offense involved the element of continuity, the purchase of liquor from time to time, its sale as a regular thing for consumption upon the premises and other transactions including the keeping of accounts. The ledger and bills being in plain view were picked up by the officers as an incident of the arrest. No search for them was made. The ledger was held to be part of the outfit actually used to commit the offense. The bills were deemed so closely related to the business that it was not unreasonable to consider them as employed to carry it on. While no use was being made of the book or papers at the moment of the arrest, they— like containers, chairs and tables for customers, the cash register, glasses and supplies—were kept to be utilized when needed. The facts disclosed in the opinion were held to justify the inference that when the arrest was made the ledger and bills were in use to carry on the criminal enterprise.

Here, the searches were exploratory and general and made solely to find evidence of respondents' guilt of the alleged conspiracy or some other crime. Though intended to be used to solicit orders for liquor in violation of the Act, the papers and other articles found and taken were in themselves unoffending. The decisions of this court distinguish searches of one's house, office, papers or effects merely to get evidence to convict him of crime, from searches such as those made to find stolen goods for return

to the owner, to take property that has been forfeited to the Government, to discover property concealed to avoid payment of duties for which it is liable, and from searches such as those made for the seizure of counterfeit coins, burglars' tools, gambling paraphernalia and illicit liquor in order to prevent the commission of crime. *Boyd* v. *United States,* 116 U. S. 616, *et seq. Weeks* v. *United States,* 232 U. S. 383, 395. *Gouled* v. *United States, supra,* 306. *Carroll* v. *United States, supra.*

In *Entick* v. *Carrington,* 19 How. St. Tr. 1029, Lord Camden declared that one's papers are his dearest property, showed that the law of England did not authorize a search of private papers to help forward conviction even in cases of most atrocious crime, and said (p. 1073): " Whether this proceedeth from the gentleness of the law towards criminals, or from a consideration that such a power would be more pernicious to the innocent than useful to the public, I will not say. It is very certain, that the law obligeth no man to accuse himself; because the necessary means of compelling self-accusation, falling upon the innocent as well as the guilty, would be both cruel and unjust; and it should seem, that search for evidence is disallowed upon the same principle. There too the innocent would be confounded with the guilty."

The teachings of that great case were cherished by our statesmen when the Constitution was adopted. In *Boyd* v. *United States, supra,* 630, this Court said: " The principles laid down in this opinion [*Entick* v. *Carrington*] affect the very essence of constitutional liberty and security. . . . They apply to all invasions on the part of the Government and its employees of the sanctity of a man's home and the privacies of life. . . . A forcible and compulsory extraction of a man's own testimony or of his private papers to be used as evidence to convict him of crime or to forfeit his goods is within the condemnation of that judgment. In this regard the Fourth and Fifth

Amendments run almost into each other." And this Court has always construed provisions of the Constitution having regard to the principles upon which it was established. The direct operation or literal meaning of the words used do not measure the purpose or scope of its provisions. *M'Culloch* v. *Maryland*, 4 Wheat. 316, 406, 407, 421. *Boyd* v. *United States, supra*. *Byars* v. *United States, ubi supra*.

This case does not differ materially from the *Go-Bart* case and is ruled by it. An arrest may not be used as a pretext to search for evidence. The searches and seizures here challenged must be held violative of respondents' rights under the Fourth and Fifth Amendments.

*Affirmed.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.