## UNITED STATES v. LERNER.

### No. 33042.

United States District Court
N. D. California, S. D.

Oct. 16, 1951.

Chauncey Tramutolo, U. S. Atty., San Francisco, Cal., for plaintiff.

Gerald D. Marcus, San Francisco, Cal., for defendant.

OLIVER J. CARTER, District Judge.

Before the court is defendant's motion to suppress and for the return of evidence. The pertinent facts are as follows:

At about 3:00 p.m. on June 29, 1951, the defendant Robert Lerner entered his four room apartment located at 237 Leavenworth Street, San Francisco, California, and was there greeted by two agents of the Federal Bureau of Investigation who then placed him under arrest. The arrest was made pursuant to a warrant issued upon the ground of the defendant's alleged violation of Section 1071, Title 18 U.S.Code (harbor-

ing or concealing a fugitive). Although they did not possess a search warrant, the agents then proceeded to make an exhaustive search of the defendant's apartment, looking among other places in dresser drawers, under the carpets, in waste baskets, through articles of clothing hanging in a closet and in a collapsible letter file on the floor in a closet. As a result of this search, the agents took into their possession certain items of property.[1] Briefly summarized, the property taken consisted of correspondence and papers, including bills and statements, photographs, receipts, a telephone list, an address book, an identification bracelet and scraps of torn up correspondence.

It appeared from the oral testimony that except for a scrap of a letter (Item No. 24) removed from the person of the defendant at the time of the arrest and the scraps of torn correspondence (Item No. 30) removed from a waste basket, the remaining evidence was taken from the defendant's letter file. Defendant has not directed his motion to the scrap of letter (Item No. 24).

1. The property taken as a result of the search is described as follows:
   1. Identification bracelet for R. F. Gulley.
   2. Birthday Card signed "Ralph".
   3. 3 photographs of Ralph Franklin Gulley.
   4. A note addressed to "Dear Robert" signed "as always, Ralph."
   5. Bill from Merwin, Holtzen & Fiora to Ralph F. Gulley for $46.55.
   6. Indiana Employment Security Division card for Gulley, Ralph.
   7. Photo of interior of house (2).
   8. Letter to Mr. Robert H. Gardner, FBI, San Francisco, signed Ralph F. Gulley, dated 1/13/51.
   9. Envelope addressed to Mr. Paul R. Randolph c/o Robert P. Lerner, 237 Leavenworth St., San Francisco, postmarked March 6, 1951 from Columbia of San Francisco.
   10. Bill for $30.00 for Gulley, Ralph from Stanford University Hospital dated 2/9/50.
   11. Bill for $68.29 from Berl Berry Motors Inc. for Ralph F. Gulley dated Nov. 30, 1950.
   12. Statement from Jenkel Jewelers to Ralph Gulley indicating balance $116.83 on 4/5.
   13. Receipt from Berl Berry Motors Inc. dated 3/12/51 for $15.00 received of Ralph Gulley rec'd from R. Lerner.
   14. Receipt from Berl Berry Motors inc dated 3/21/51 for $10.00, received of Ralph Gulley (Rec'd from Mr. Lerner).
   15. Creditors Service Bureau receipt for $20.00 for account of Merwin, Holtzen Fiora dated 5/14/51.
   16. Money order receipt for $13.29 dated April 7, 1951 for Berry Ford.
   17. 1 photo of Robert P. Lerner standing beside Ford convertible.
   18. 1 street photo of Ralph F. Gulley.
   19. Letter to Ralph Gulley from The Travelers, Hartford 15, Connecticut dated 7–11–50.
   20. Statement from Emporium to Ralph Gulley showing balance of $166.10 due dated 10/6/50.
   21. Tan covered address book of Robert P. Lerner.
   22. Grey covered telephone list of Robert P. Lerner.
   23. American Trust Company Savings account book No. 19334 for Ralph F. Gulley and envelope.
   24. Part of letter reading "I'm writing Mr. Gardner a letter stating that I will be in his office on or before the 20th of this month—so don't you go and say anything."
   25. Note addressed to "Bob:" signed "always r."
   26. Statement from Pacific Outfitting Company, Seattle dated 2–27–51 to Paul R. Randolph c/o Robert P. Lerner, 237 Leavenworth S. F. account No. 7934 showing balance of $63.26 on January 6 (year not indicated).
   27. Western Union Telegraph Co. Receipt dated March 9, 1951 from Robert Lerner to Pacific Outfitting Co. Seattle, Washington, in amount of $63.26.
   28. Statement from Hotel Tuller, Detroit, Mich. June 1, 1951 to Robert Lerner, 237 Leavenworth St., San Francisco, California showing No. 852–25947 $17.70. Enclosed in an envelope addressed as statement, postmarked June 2, 1951, Detroit, Michigan.
   29. Post card postmarked Windsor, Ontario, Canada, May 17, 1951 addressed to Mr. Robert Lerner, 237 Leavenworth Street, San Francisco, California signed "Best regards, R. G."
   30. One paper bag containing torn up correspondence.

Since the government contends that the defendant consented to the search and seizure and thereby waived his Constitutional protection, a short resume of the conversation that took place between the agents and the defendant is necessary. When the defendant arrived at his apartment the two agents were in his apartment awaiting his arrival. One of them informed the defendant that he was under arrest for harboring and concealing one Ralph Franklin Gulley, a fugitive. The agent then advised the defendant that he was going to search the apartment, and the defendant asked him if he had a search warrant, to which the agent replied that he didn't need one because the search was being made incidental to an arrest. The agent testified that the defendant appeared to be excited and disturbed, and that he advised the defendant to sit down and take it easy. At one stage of the search one of the agents was going through a dresser of the defendant, and the defendant said in substance, "Go ahead and make your search, you won't find anything anyway." Later on during the search one of the agents found a bank deposit book under the rug, at which time the defendant made an attempt to take the deposit book away from the agent. The defendant was advised to sit down and take it easy and he wouldn't be hurt. A few days after the search one of the agents brought to the defendant a list of the items taken from the apartment after the search, which the defendant certified as being all of the items taken from the apartment as a result of the search of his person and his premises. The defendant contends that the search of the apartment was in violation of the rights of the defendant as guaranteed in the Fourth and Fifth Amendments to the Constitution. The defendant further contends that even if the search of the apartment was lawful, the seizure of the evidence taken, except that which was taken from his person, violated his rights guaranteed in the Fourth and Fifth Amendments to the Constitution. The defendant finally contends that the evidence does not support the government's contention that the defendant consented to the search and seizure and thereby waived his Constitutional rights.

A fair interpretation of the evidence requires a finding that the defendant did not consent to the search and seizure which took place in his apartment. Courts should carefully scrutinize any contention that a defendant voluntarily consented to a search of his premises after he has been placed under the compulsion of arrest. Upon such a scrutiny of the evidence in this case it is apparent that the attitude of the defendant was one of protest rather than consent, and the only reason that he permitted the search without physical violence was the fact that he was under arrest and was outnumbered by his opposition. The courts have consistently refused to hold that a defendant has consented to a search in situations much stronger in favor of the government than the case at bar. Some of these cases are: Karwicki v. U. S., 4 Cir., 55 F.2d 225; U. S. v. Marra, D.C.N.Y.W.D., 40 F.2d 271; U. S. v. Slusser, D.C.Ohio 1921, 270 F. 818; U. S. v. Abrams, D.C.Vermont, 230 F. 313.

Coming next to the question of whether or not the search and seizure was unlawful because it was in violation of the defendant's rights guaranteed under the Fourth and Fifth Amendments to the Constitution, the government relies upon the case of Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. In that case, agents of the government made a search of the defendant's apartment after arresting him on warrant, and in the course of the search found illegally in his possession certain draft cards which were in no way connected with the crimes for which the defendant was arrested. The Court held that the seizure of the draft cards which were illegally in the possession of the defendant was lawful because the search which led to their seizure was lawful. The agents making the arrest had reason to believe that the defendant was in possession of some stolen checks which were used in connection with the crime for which he was arrested, and the search was made for the stolen property. It was while this lawful search was in progress that the contraband draft cards were discovered. Thus the search was for stolen property and the seizure was of property possession of which

was a criminal act being committed in the presence of the agents. The Court was both clear and specific in pointing out that an arrest made upon a warrant did not in itself authorize a general search of the premises where the arrest was made so that the arresting officers could seize evidentiary materials connecting the person arrested with the crime for which he was arrested. The Court said, 331 U.S. at page 153, 67 S.Ct. at page 1102:

"Nor is this a case in which law enforcement officers have entered premises ostensibly for the purpose of making an arrest but in reality for the purpose of conducting a general exploratory search for merely evidentiary materials tending to connect the accused with some crime. Go-Bart Company v. United States, supra, [282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374]; United States v. Lefkowitz, supra, [285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877]. In the present case the agents were in possession of facts indicating petitioner's probable guilt of the crimes for which the warrants of arrest were issued. The search was not a general exploration but was specifically directed to the means and instrumentalities by which the crimes charged had been committed, particularly the two canceled checks of the Mudge Oil Company. The Circuit Court of Appeals found and the District Court acted on the assumption that the agents conducted their search in good faith for the purpose of discovering the objects specified. That determination is supported by the record. The two canceled checks were stolen from the offices of the Mudge Oil Company. There was evidence connecting petitioner with that theft. The search which followed the arrest was appropriate for the discovery of such objects. Nothing in the agents' conduct was inconsistent with their declared purpose.

"Furthermore, the objects sought for and those actually discovered were properly subject to seizure. This Court has frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime. Clearly the checks and other means and instrumentalities of the crimes charged in the warrants toward which the search was directed as well as the draft cards which were in fact seized fall within that class of objects properly subject to seizure. Certainly this is not a case of search for or seizure of an individual's private papers, nor does it involve a prosecution based upon the expression of political or religious views in such papers."

■ Applying these tests to the case before this court it is clear that the Harris case is not authority for the government's position, but, to the contrary, it requires that the seizure made by the agents in this case be held invalid. In the case at bar not a single item which was seized as a result of the search was illegally in the possession of the defendant. It cannot be said that any of the items seized were instrumentalities or means by which a crime was committed, nor were they the fruits of the crime, such as stolen property, nor were they weapons by which escape of the person arrested might be effected, nor property the possession of which is a crime. To the contrary, they were merely evidentiary materials tending to connect the defendant with the crime for which he was arrested. Furthermore, the government has failed to establish any reason for the search conducted in this case other than that it was incidental to arrest. There is no showing that there was any specific object for which the search was initiated, and there is no showing here as there was in the Harris case that the agents had any probable cause to believe that stolen property was on the premises of the defendant at the time of his arrest.

This case comes within the prohibition against exploratory and general searches laid down in the case of United States v. Lefkowitz, 285 U.S. 452, 465, 52 S.Ct. 420, 423, 76 L.Ed. 877, where the Court said:

"Here, the searches were exploratory and general and made solely to find evidence of respondents' guilt of the alleged conspiracy or some other crime. Though intended to be used to solicit orders for liquor in violation of the act, the papers and other articles found and taken were in themselves unoffending. The decisions of this court distinguish searches of one's house, office, papers or effects merely to get evidence to convict him of crime from searches such as those made to find stolen goods for return to the owner, to take property that has been forfeited to the government, to discover property concealed to avoid payment of duties for which it is liable, and from searches such as those made for the seizure of counterfeit coins, burglars' tools, gambling paraphernalia, and illicit liquor in order to prevent the commission of crime."

See also Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Weeks v. United States, 232 U.S. 383, 395, 34 S.Ct. 341, 58 L.Ed. 652; Gouled v. United States, 255 U.S. 298, 310, 41 S.Ct. 261, 65 L.Ed. 647.

It is therefore clear that the evidence taken as a result of the search of the defendant's apartment was unreasonably and unlawfully seized, and the defendant's motion to suppress and return should be granted.

Now therefore be it and it is hereby ordered, adjudged and decreed:

1. That all evidence taken and seized from the defendant as the result of the search of defendant's apartment at 237 Leavenworth Street, San Francisco, California, by agents of the United States on the 29th of June, 1951, as set forth in Exhibit "A" attached to the Petition In Support Of Motion To Suppress And For Return Of Evidence be and the same is hereby suppressed except Item No. 24, and it is further ordered that such evidence shall be and is hereby excluded and is inadmissible as evidence upon the trial of this action.

2. That all of said evidence except Item No. 24 be returned to the defendant Robert Peter Lerner.