**UNITED STATES of America**

v.

**Emanuel LESTER, also known as Emanuel Lieberman, Edward Lieberman, Irving Milner and Odie Seagraves.**

**Cr. No. 15090.**

United States District Court
W. D. Pennsylvania.

Dec. 12, 1957.

On Motion to Suppress Evidence
Dec. 21, 1957.

See also 21 F.R.D. 30.

Hubert Teitelbaum, First Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Bernard Tompkins, New York City, Arthur D. Gatz, Jr., Pittsburgh, Pa., for defendants Emanuel Lester and Edward Lieberman.

Archibald Palmer, New York City, Clyde E. Donaldson, Pittsburgh, Pa., for defendant Odie Seagraves.

MARSH, District Judge.

The moving defendants, Odie Seagraves, Emanuel Lester and Edward Lieberman, are under indictment upon a charge that on and after the first day of January, 1952, and continuously thereafter up to and including the 18th day of December, 1956, at Pittsburgh, in the County of Allegheny, in the Western District of Pennsylvania, and at Houston, in the Southern District of Texas, and at New York, in the Southern District of New York, together with persons named as co-conspirators but not as defendants, they conspired to violate § 2314, Title 18 United States Code, in that they conspired to transport certain goods and wares valued in excess of $5,000, to-wit: certain geological and seismographic maps of the Gulf Oil Corporation, in interstate commerce from Pittsburgh, Pennsylvania, to Houston, Texas, and to New York, New York, which said maps had theretofore been stolen, and knowing the same to be stolen.

The indictment which is in one count alleges 8 overt acts setting forth the dates thereof, all of which occurred between on or about January 2, 1956 and on or about December 18, 1956.

The defendants move pursuant to Rule 7(f), Fed.R.Crim.P., 18 U.S.C., for a bill of particulars as to the identity and value of the alleged stolen maps, the overt acts, and particularization of the word "value" as used in the indictment.

Section 2311, Title 18 U.S.C., prescribes that " 'Value' means the face, par, or market value, whichever is the greatest * * * ".

We think cause has been shown requiring the court to direct that the United States Attorney list and identify each of the certain geological and seismographic maps referred to on page 2 of the indictment, and to specify whether the word "value" as used in the indictment refers to "face, par, or market value." [1] As to the latter, we think the defendant is entitled to know now which of the three types of value the government expects to prove at the trial in order that the defendants may secure qualified witnesses and prepare a defense to meet the issue of value.

The court is of the opinion that no basis has been established requiring it to direct the granting of the motion with respect to the overt acts. It is sufficient to say that the particulars the defendants seek in connection with the overt acts go far beyond anything to which the defendants are entitled. They demand detailed evidence of the overt acts set forth in the indictment. They seek evidential matters which in large measure would require the Government to submit to the defendants in advance of trial the proof upon which it would necessarily have to rely to establish a case against the defendants. This is not the purpose of a bill of particulars in a criminal case.

It is not the function of a bill of particulars to furnish the accused with the

---

1. At argument the Government conceded that the maps had no par value, but refused to state whether it intended to prove that the maps had a face value or a market value.

evidence of the prosecution. Moreover, we think that if any of the defendants are implicated at all, they are actually in possession of most of the information requested or have equal opportunity with the Government to obtain it. See United States v. Brennan, D.C.D.Minn.1955, 134 F.Supp. 42; United States v. Universal Milk Bottle Service, D.C.S.D.Ohio 1949, 85 F.Supp. 622.

The basic requirement of an indictment has been met, namely, that the accused have been definitely informed as to the charge against them and should be enabled to prepare their defense without being taken by surprise by the evidence offered at the trial. Since the Government will be ordered to identify each of the maps referred to on page 2 of the indictment, each defendant will be protected against another prosecution for the same offense. Cf. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545.

■ The language of the indictment, and particularly the overt acts, are sufficiently specific as to time, place and other data as to furnish the defendants with the information necessary to safeguard their rights and to enable them to properly prepare their defense and to meet the Government's case. This is especially so after the Government specifies the type of value it expects to prove.

An appropriate order will be entered.

### On Motion to Suppress Evidence

■ On December 18, 1956, Edward Lieberman, who was president of United States Tackless Corporation, was arrested in his office located on the second floor of a two-story building, leased by the corporation, at 181 Walnut Avenue, Bronx, New York, on a warrant of arrest charging transportation of maps in interstate commerce, knowing the same to have been stolen, in violation of the National Stolen Property Act, Title 18 U.S.C. § 2314.

After the arrest and pursuant to a search warrant, the premises of the corporation were searched by agents of the Federal Bureau of Investigation for certain maps of the Gulf Oil Corporation and "all reports, memoranda, files, books, correspondence and other writings pertaining thereto." Several maps allegedly belonging to Gulf Oil Corporation were found and seized, together with articles of personalty, documents having to do with the oil business, and correspondence.

Subsequently, the movants, Edward Lieberman and Emanuel Lester, who is a brother of Edward Lieberman, were indicted, along with other persons, in the Western District of Pennsylvania, for conspiracy to transport the Gulf maps in interstate commerce, knowing them to have been stolen.

Lieberman and Lester, by affidavits filed with their motion to suppress,[1] claim ownership and possession of all the material seized; they assert that the search and seizure violated their rights under the 4th and 5th Amendments of the Constitution. They seek to have the seized property returned to them.

The government denies that movants own the seized property.

A hearing was held. From the testimony taken at the hearing, we find the following facts:

On December 17, 1956, a search warrant was issued by the United States Commissioner in and for the Southern District of New York to Special Agent Joseph W. Sargis of the Federal Bureau of Investigation, authorizing him to search the premises of the United States Tackless Corporation, 181 Walnut Avenue, Bronx, New York, and to seize geophysical and seismographic maps embezzled and stolen from the Gulf Oil Corporation at Pittsburgh, Pennsylvania, together with all reports, memoranda, files, books, correspondence and other writings pertaining thereto.

1. Lester's affidavit was admitted in evidence as petitioners' Exhibit 1; it incorporates by reference Lieberman's affidavit.

The said warrant was issued on an affidavit sworn to before the said Commissioner on December 17, 1956, by W. B. Edwards, an attorney employed by Gulf Oil Corporation, wherein deponent swore, inter alia, that at least thirty original geological and seismographic maps, together with reports and memoranda pertaining thereto, had been stolen from the offices of the Gulf Oil Corporation, Seventh Avenue and Grant Street, Pittsburgh, Pennsylvania, and that on the morning of December 17, 1956, he saw and recognized a number of the stolen maps upon the premises of the United States Tackless Corporation at 181 Walnut Avenue, Bronx, New York, and that these maps had been stolen in Pittsburgh, Pennsylvania, and unlawfully transported in interstate commerce from Pittsburgh, Pennsylvania, to the Southern District of New York, in violation of Title 18, U.S.C. § 2314.

On December 18, 1956, a warrant of arrest was issued by the United States Commissioner at Pittsburgh, Pennsylvania, for the arrest of Edward Lieberman upon a complaint signed by Special Agent John J. Sweeney of the Federal Bureau of Investigation at Pittsburgh, Pennsylvania. This complaint charged that Edward Lieberman transported stolen maps of Gulf Oil Corporation in interstate commerce, with knowledge that they had been stolen, in violation of Title 18 U.S.C. § 2314. The arrest warrant was received in New York on December 21, 1956.

At 11:59 A.M. on December 18, 1956, Special Agent Joseph W. Sargis, accompanied by ten agents of the Federal Bureau of Investigation, entered the premises of the United States Tackless Corporation and placed Edward Lieberman under arrest pursuant to the warrant of arrest issued at Pittsburgh. At 12:05 P.M., Edward Lieberman departed from the premises of the United States Tackless Corporation, accompanied by two agents. One John Leivia was also arrested and was taken from the premises by two agents.

After their departure, Special Agent Sargis stationed an agent at the business entry of the premises and another in the receiving, shipping and storage area to observe activity there. He, along with four other agents, then searched the premises at 181 Walnut Avenue, occupied by the United States Tackless Corporation.

The entry onto the premises was made without the breaking of any doors and without destruction of any part of the premises or its contents, with the exception of a wooden crate and two packages which were opened for examination without damage to their contents. The search for the maps was conducted without stopping the business there being performed.

During the search, the agents found on the premises and seized several [2] geophysical or seismographic maps, alleged to have been embezzled and stolen from the Gulf Oil Corporation at Pittsburgh, Pennsylvania.

During the search, a mailed package addressed to "Mr. Edward Liberman, % U. S. Tackless, 181 Walnut Ave., Bronx 54, N. Y. C., New York", with a return address of "9121 Ave. Q", and postmarked "Houston, Texas", was delivered to the premises by a mail carrier who handed it to an agent stationed at the street entrance to the premises. The agent carried it upstairs to Edward Lieberman's private office and placed it on a table in the presence of Special Agent Sargis and Max Lieberman. The latter was the father of the addressee, and secretary-treasurer of the corporation; he was present during the entire search.

Max Lieberman opened the said mailed package, whereupon Agent Sargis seized it and the contents thereof.

The contents of said mailed package consisted, inter alia, of fifteen photo-

---

2. Six maps, according to Government's Exhibit 5-A.

static copies of geophysical or seismographic maps, alleged to have been embezzled and stolen from the premises of Gulf Oil Corporation at Pittsburgh, Pennsylvania.

The day previous to the search, Agent Sargis had been informed by John Leivia that he had requested Rosa Hernandez of Houston, Texas, to mail certain maps to Edward Lieberman. The agent did not know when the package containing the maps would be delivered to the premises, nor did he time the search for the purpose of seizing it.

John Leivia performed services for Gulf Oil Corporation for which he was compensated by that company through Edwards. It was he who introduced Edwards, under an assumed name as an oil investor, to Edward Lieberman.

The agents, upon search, discovered and seized miscellaneous documents pertaining to dealings in oil and gas leases or prospective oil and gas leases by Edward Lieberman and Emanuel Lester. A substantial part of the seized items were found in, and taken from, the office of Edward Lieberman. These documents were seized along with the folders or containers in which they were found, which folders or containers contained other documents and personalty not related to oil or gas transactions such as personal letters, photographs, passport, identity cards, army discharge, costume jewelry, and business correspondence.

The miscellaneous papers and material seized did not pertain to the maps of the Gulf Oil Corporation, nor was it shown that any of such items were stolen or embezzled from said Corporation.

### The Movants Are Persons Aggrieved

The government in opposing the motion to suppress contends that neither movant was a person aggrieved within the meaning of Rule 41(e), Fed.R.Crim. P. 18 U.S.C.

It is my opinion that Edward Lieberman was a party aggrieved. He was president of the United States Tackless Corporation, and it was in his private office that the search took place and from which most of the material belonging to himself and his brother, Lester, was seized.

The lawful possession by Lieberman of papers and property, either his own or his brother's, was entitled to protection against an unlawful search and seizure. United States v. Antonelli Fireworks Co., D.C., 53 F.Supp. 870.

One has the requisite standing as a person aggrieved if he claims ownership of the seized property, although the premises searched belonged to another. United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; Pielow v. United States, 9 Cir., 8 F.2d 492; United States v. Fowler, D.C., 17 F.R.D. 499.

It is not so clear that Emanuel Lester is a person aggrieved. Lester alleges in his affidavit filed with the moving papers that he had an office in the United States Tackless Corporation. Although this fact was not denied by the government, neither did movants offer any affirmative proof thereof.

Lester, in his affidavit, claims ownership of all the property seized, but was careful to state that he did not know what this property was because of the alleged deficiencies in the inventory filed, and, then, he was in jail at the time of the search.

Lester's ownership of the property seized, as well as Lieberman's ownership, is denied by the government.

From the testimony taken at the hearing, it cannot be doubted that considerable correspondence and personalty seized belonged to Lester. Hence, we think he, as well as Lieberman, has the necessary standing to invoke the protection of the 4th Amendment as to those papers and articles under the authorities cited above.

As to the maps allegedly stolen from Gulf Oil Corporation in Pittsburgh and transported interstate to New York, neither movant proved ownership in himself. Lester does not specifically and un-

equivocably claim ownership of the disputed maps as distinguished from his personal correspondence and some of the personalty. He did not testify at the hearing.

Lieberman did testify at the hearing but expressly disavowed ownership of the maps, and said he had "ownership by possession" of the maps found in his office. The most he proved was that he was a mere custodian of those maps for his brother, Lester; and, no doubt, he expected to have custody for his brother of those maps mailed from Texas. He said Lester owned all the maps found on the premises,[3] but no evidence of Lester's title thereto was adduced.

 It is clear that one who does not prove ownership in or right to possession of the alleged stolen maps, specified and seized under a valid search warrant has no right to have them suppressed or returned before trial. Cf. Accardo v. United States, D.C.Cir., 247 F.2d 568.

### The Search Warrant Was Valid and the Search Was Reasonably Conducted

█ The affidavit of W. B. Edwards, taken by the United States Commissioner in New York, is explicit that maps of the Gulf Oil Corporation were stolen or embezzled at Pittsburgh, and that some had been seen by him on the premises of the United States Tackless Corporation at a specified address in New York State in violation of the National Stolen Property Act. That the Commissioner had probable cause to issue the warrant sufficiently appears in Edwards' affidavit; and probable cause was fully justified by Edwards at the hearing. The complaint and the search warrant issued pursuant thereto met all the prescribed tests. Hence, the maps were properly seized under the search warrant

as property stolen or embezzled in violation of federal law. Rule 41(b), Fed. R.Crim.P.

The search for the maps, which lasted approximately 3½ hours, was thorough but reasonably conducted in the circumstances in the two-story building. The agents were required to pry into hidden places including packages, files, desks and brief cases in order to find the Gulf maps. They did just that. The hearing disclosed that in addition to the Gulf maps, they seized maps [4] and material which were not identified as Gulf property; these must be returned.

The Gulf maps, lawfully seized pursuant to the search warrant, need not be returned. Quandt Brewing Co. v. United States, 2 Cir., 47 F.2d 199, citing McGuire v. United States, 273 U.S. 95, 47 S.Ct. 259, 71 L.Ed. 556.

### The Seizure of Mailed Maps Was Reasonable

█ A package mailed to Lieberman from Texas and delivered to the premises of United States Tackless Corporation during the progress of the search presents a novel problem. Sargis, the agent in charge, had probable cause to suspect that a package mailed from Texas contained some of the allegedly stolen Gulf maps. It was brought out that Leivia was instrumental in having one Rosa Hernandez mail other Gulf maps to Lieberman from Texas, and this information was in possession of Agent Sargis. Sargis was already acting under a valid warrant to search and seize these Gulf maps if found on the premises. In my opinion, he was not required to interrupt his search and return to the Commissioner for another warrant to search this package. As stated previously, he had the duty to search for stolen maps on the premises, which included the duty to

---

3. Forty-six maps were found on premises and seized.

4. Since identification had been removed from the Gulf maps, it is quite understandable that the agents would seize all geological and seismographic maps found.

open suspected packages. The package from Texas delivered to the premises during the search came under the power of the warrant to search.

If that package had been delivered in the morning prior to the search, we think beyond dispute that the agent could have searched it and seized the maps therein, and this even though the package was not on the premises at the time the search warrant was issued. See Atlanta Enterprises, Inc., v. Crawford, D.C., 22 F.2d 834, where seizure was upheld although the objects seized were not on the premises specified in the warrant at the time it was issued.[5]

I do not think it is material whether Max Lieberman opened the package voluntarily, or whether he opened it under the direction of the agent. The agent himself had the right to open it.

### Articles Seized Incident To Authorized Search for the Maps

■ From the evidence it does not appear that any of the maps not identified as Gulf's and any of the other property and papers seized from the office, files and desk of Lieberman, pertained in any direct way to the Gulf maps. It is true that the seized material may be useful as evidence in establishing the crime of conspiracy against Lieberman, Lester and the other persons named in the indictment, and the coconspirators unnamed in the indictment; but seizures under valid search warrants of evidential matter is forbidden.

In Marron v. United States, 275 U.S. 192, at page 196, 48 S.Ct. 74, at page 76, 72 L.Ed. 231, it is stated:

"The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a

warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

See, also, Go-Bart Importing Co. v. United States, 282 U.S. 344, at page 357, 51 S.Ct. 153, 75 L.Ed. 374.

■ Even if the search of Lieberman's office was reasonable, it does not follow that the seizure was lawful. Since the agents had obtained a warrant to look for maps, reports and memoranda belonging to Gulf, they might search diligently, as they did, but they would not be entitled to seize other items discovered in the process. The 4th Amendment requires that the search warrant particularly describe the things to be seized, and a party aggrieved is entitled to the return of evidential material or articles not so described. See Rule 41(e), Fed.R.Crim.P., particularly clause (3).[6]

As stated in Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 1103, 91 L.Ed. 1399:

"This Court has frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed,. * * *"

The agent testified as follows:

"A. In any folder or container, if there were items that pertained to oil, oil transactions or maps, I seized the folder or the container intact." (T., p. 65.)

"Q. Do we understand now that your purpose in executing this war-

---

5. See also United States v. Doe, D.C., 19 F.R.D. 1; United States v. Old Dominion Warehouse, Inc., 2 Cir., 10 F.2d 736.

6. Rule 41(e), clause (3), provides for the

return of property and its suppression as evidence on the ground that "(3) the property seized is not that described in the warrant."

rant and the way you executed it was to seize anything that had anything to do with the oil business. Is that correct? A. Right. That is correct.

"Q. Now, had you been given—and I assume then—tell me if I am wrong—that your instructions the night before were to seize any evidence that had anything to do with the oil business. Was that it in substance? A. There is an addition there too. That is, pertaining to the Liebermans, Emanuel Lester or Edward Lieberman.

"Q. That is, anything that connected with Edward Lieberman or Emanuel Lester, to do with the oil business? A. Right." (T., p. 66.)

"Q. But if a matter appeared to you to be either a map or something that had reference to the oil business, did you take that with you? A. I seized that and if it was in a container with other things, I took the container and the other things as a unit." (T., p. 113.)

Every file in Lieberman's office that had anything to do with oil was seized intact even though that file contained miscellaneous matters. Every map was seized. A brief case and its many miscellaneous contents was seized simply because it contained maps and a prospectus pertaining to an oil company,—not Gulf. If there were any papers seized which could be fairly said under the evidence to have been stolen or embezzled from the Gulf Oil Corporation, or which directly pertained or referred to the Gulf maps, we would certainly let the government retain them, but I fail to detect any such proof.

Thus it appears, in addition to the stolen maps, that the agents seized a welter of additional items in the hope that much of it would be useful as evidence of crime.

■■■ Exploratory searches for evidence of crime have long since been condemned by the United States Supreme Court, and the seized evidential matter must be returned to movants. Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098.

As stated in United States v. Lefkowitz, supra, 285 U.S. at pages 464, 465, 52 S.Ct. at page 423:

"Respondents' papers were wanted by the officers solely for use as evidence of crime of which respondents were accused or suspected. *They could not lawfully be searched for and taken even under a search warrant issued upon ample evidence and precisely describing such things and disclosing exactly where they were.* Gouled v. United States, 255 U.S. 298, 310, 41 S.Ct. 261, 65 L.Ed. 647." (Emphasis supplied.)

### Articles Seized Incident To Arrest Warrant

■■■ Since it was stipulated that Agent Sweeney, who made the complaint to the United States Commissioner at Pittsburgh, did so on information received and not on personal knowledge, I think the arrest warrant is invalid. Obviously, if Sweeney had obtained Edwards' knowledge of the facts, he would have had probable cause for asking the Commissioner to issue the arrest warrant; neither Sweeney's complaint, nor the warrant, nor any testimony shows that Sweeney ever talked to Edwards or to any agent who had investigated the facts. How then can it be said that the arrest warrant was issued on probable cause? Go-Bart Importing Co. v. United States, 282 U.S. 344, 355, 51 S.Ct. 153;

United States v. McCunn, D.C., 40 F.2d 295; United States ex rel. King v. Gokey, 2 Cir., 32 F.2d 793; United States v. Langsdale, D.C., 115 F.Supp. 489.

But assuming, arguendo, that the arrest warrant is valid, it may not be used as a pretext to search for evidence of a crime. United States v. Lefkowitz, supra. When the chief object of entering premises is for the purpose of search rather than arrest, the search cannot be justified as an incident of a lawful arrest.[7] Henderson v. United States, 12 F.2d 528, 51 A.L.R. 420. When one is lawfully arrested, a search of his person and the premises under his immediate control without a search warrant is not forbidden by the 4th Amendment, and anything found on his person or in the premises *which is unlawful for him to have* may be seized and used as incriminating evidence against him. Harris v. United States, supra. Except for the Gulf maps, none of the items of property seized by the agents was unlawful for Lieberman to have in his custody or possession. Those other items at best are evidential material.

The arrest warrant was not broad enough to cover the crime of conspiracy, and it must be borne in mind that Lieberman was not arrested while he was committing a crime as in the case of Marron v. United States, supra, and in the case of United States v. Rabinowitz, 339 U.S. 56, see particularly page 60, 70 S.Ct. 430, 94 L.Ed. 653. He was not then engaged in conspiring with anyone to transport stolen maps. Cf. United States v. Lefkowitz, supra, 285 U.S. at page 463, 52 S.Ct. 420. Hence, other than the Gulf maps, the retention of the evidential material cannot be justified under the warrant of arrest.

Appropriate orders will be entered.

7. It is to be noted that movants were not indicted for violation of the National Stolen Property Act as alleged in the arrest warrant, but for conspiracy to vio-

late that Act. Cf. United States v. Lefkowitz, 285 U.S. 452, at pages 462–464, 52 S.Ct. 420.