UNITED STATES of America,
Plaintiff,

v.

Richard **RAIDL**, Defendant.

Crim. No. 65-175.

United States District Court
N. D. Ohio, E. D.

Sept. 9, 1965.

Merle M. McCurdy, U. S. Dist. Atty., Robert J. Rotatori, Elmer A. Giuliani, Asst. U. S. Attys., Cleveland, Ohio, for plaintiff.

Zellmer, Rhein & Gruber, Maxwell J. Gruber, Robert W. Jones, Cleveland, Ohio, for defendant.

CONNELL, Chief Judge.

On April 14, 1964 Customs Agents secured warrants for the search of a building at 6576 Brecksville Road, Independence, Ohio, a business known as Arms and Armor, and for the residence of Richard Raidl at 1715 Cypress Avenue, Cleveland, Ohio. These warrants were issued upon the affidavits of Glendon R. Howson, Customs Agent in Charge, who stated that he had reason to believe that certain items had been fraudulently imported into the United States with intent to defraud the United States, in violation of 18 U.S.C. § 545. The complainant further stated that probable cause to authorize the issuance of the warrants was based on his personal knowledge and information which he had received from a confidential source which he considered to be reliable. At the same time, the Commissioner issued a warrant for the arrest of Richard R. Raidl for an alleged violation of 18 U.S.C. § 545 based upon a complaint lodged by Agent Howson.

On April 15, 1964, at approximately 7:30 P.M. (E.S.T.) government agents served upon the petitioner the warrant authorizing search of the business and they executed a search of that building. During the course of that search the agents also served upon petitioner the warrant for the search of his dwelling; the search of the dwelling was executed at approximately 12:15 A.M. (E.S.T.) April 16th, 1964.

The petitioner now moves for the suppression of evidence gained from these searches and for the return of the property seized. Petitioner argues that the affidavits of Agent Howson were insufficient to inform the Commissioner that there was probable cause to justify the issuance of the warrants. The petitioner further charges that, even if a warrant might have been properly issued, the language of the warrant which was issued is so vague and indefinite as to make that warrant insufficient on its face. Petitioner further charges that, even if the warrants are valid, the execution thereof by the agents was illegal.

Before addressing the attack which the petitioner makes upon the warrants, it is necessary to dispose of the contention by the Government that warrants were unnecessary to authorize these searches. In regard to the search of the business establishment on Brecksville Road, the Government argues that the protection of the Fourth Amendment pertains only to private dwellings and not to business establishments. The cases cited by the Government for this proposition do not support it although they certainly support the proposition that the Fourth Amendment offers greater protection to private homes than it does to public business establishments. It is well settled that places of business as well as homes are within the protection of the Fourth Amendment. Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931); Giacona v. United States, 257 F.2d 450 (5 Cir. 1958); United States

v. Martin, 176 F.Supp. 262 (S.D.N.Y. 1959). As stated by the court in In re No. 32 E. 67th St., 96 F.2d 153 (2nd Cir. 1938):

" 'The Amendment applies to warrants under any statute; revenue, tariff, and all others.' * * * but no rational ground has been suggested for distinguishing between dwellings and other buildings with respect to the requirement of probable cause for issuance of a search warrant."

There is some authority for the proposition that if the store is open for business, then the protection of the Fourth Amendment does not apply. Mc-Walters v. United States, 6 F.2d 224 (9th Cir. 1925). It is clear from the testimony taken before the Commissioner, upon the petitioner's motion for dismissal, that the store was open for business when the agents began their search. Cf. Tr. proceedings of July 2, 1964, p. 17; Cf. Tr. proceedings of July 7, 1964, p. 130. We do not think, however, that the mere fact that the store was open for business is sufficient to open the door to deprivation of an otherwise inviolate constitutional right. It is true, as the Government contends, that the agents could have been on the premises as business invitees of the petitioner. But an invitation to do business is not equivalent to an invitation to ignore the petitioner's Fourth Amendment rights. Therefore we cannot accept the Government's contention that they needed no warrant to search the petitioner's place of business.

The Government also contends that the search was incidental to a valid arrest and that therefore the search is not solely dependent upon the validity of the warrant. Although the agents had secured an arrest warrant (and could have arrested the petitioner), we have no evidence in the record before us that the petitioner was actually placed under ar-

rest. Although the implication may have been clear that the petitioner was not to leave the premises after he had been served with the warrant, we cannot equate this with an arrest. We can have no arrest by implication.

In the absence of a specific Federal statute defining the elements of an arrest, we must look to the law of the jurisdiction in which the action occurred to determine whether an arrest actually took place. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). It is clear under Ohio law that to effect an arrest "there must be an intent to arrest, under a real or pretended authority, accompanied by a seizure or detention of the person which is so understood by the person arrested." Lester v. Albers Super Markets, Inc., 94 Ohio App. 313, 317, 114 N.E.2d 529, 532 (1952). The evidence before us indicates a lack of all essential elements. Moreover, Agent Howson admitted that the petitioner was not arrested until 2 P.M. April 16, 1964, the day after the search. Cf. Tr. proceedings July 2, 1964, p. 27. Therefore we must conclude that there was no valid arrest of the petitioner which might have authorized a search of the premises as an incident to an arrest.

It becomes necessary then to appraise the validity of the warrants and, if they are valid, the propriety of the execution of those warrants. The petitioner first contends that the warrant is invalid on its face because it authorized a search of the premises at night.[1] His argument is based upon the language of Rule 41(c) of the Federal Rules of Criminal Procedure, which reads in part:

The warrant shall direct that it be served in the daytime, but if the affidavits are positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time.

---

[1] Both sides strenuously argued about whether the search actually began before or after nightfall. Inasmuch as the warrant authorized the search at night, the argument is unimportant. If there is no basis in law for the issuance of a nighttime search warrant, the warrant is invalid on its face, and the fact that the warrant was executed before nightfall, if in fact it was, cannot redeem it.

The affidavits of Agent Howson in the instant case merely state that "he has reason to believe" that the premises to be searched contain property which had been imported into the United States with intent to defraud the United States. The fact that he was not positive, however, that the premises contained some items does not preclude the issuance of a nighttime search warrant. Rule 41(g) states that the Rule is not intended to "modify any act, inconsistent with it, regulating search, seizure and the issuance and execution of search warrants in circumstances for which special provision is made." Special provision has been made for the issuance of warrants in Customs cases. 19 U.S.C. § 1595 provides for the issuance of warrants to Customs officers who "have cause to suspect the presence in any dwelling house, store, or other building or place of any merchandise upon which the duties have not been paid, or which has been otherwise brought into the United States contrary to law * * *." Consequently a Customs Agent need only have cause to suspect that a building harbors contraband in order to secure a warrant; he need not be positive that contraband is there.

■ The petitioner next contends that the warrant is invalid because the affiant failed to demonstrate to the Commissioner the probable cause existing for the issuance of the warrant. The affidavit of Glendon R. Howson, Customs Agent in Charge, reads, in pertinent part:

The complainant states that this affidavit is based on his own personal knowledge and information received from a confidential source which is considered reliable.

Thus the affiant advanced two bases for his conclusion that contraband was being concealed on the premises in question. We must agree with the petitioner that the latter ground is insufficient to support a finding of probable cause. The United States Supreme Court, in Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) struck down a similar affidavit, which read:

Affiants have received reliable information from a credible person and do believe that * * * narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.

Although the court recognized that hearsay evidence might be a proper basis for an affidavit and that the affidavit need not necessarily reflect the direct personal observation of the affiant—

[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, * * * was "credible" or his information "reliable." (at p. 114, 84 S.Ct. at p. 1514)

In so far as the affidavit in the instant case is predicated upon the latter ground, we think it runs afoul of this constitutional command which the *Aguilar* case establishes. From the application by Agent Howson, the Commissioner was afforded no evidence from which *he* could conclude that the Agent's source of information was reliable.

■ However, the affiant also insisted that his conclusions were founded upon his own observation. Our question ultimately is whether this statement, standing alone, can support the issuance of a warrant. Although we assume that, when an officer of the law swears that he has personal knowledge of the allegedly criminal activity of which he complains, his respect for that oath would educe a truthful statement, we are, however, confined to the language of the affidavit to determine whether it indicates sufficient probable cause to justify the issuance of a warrant. The Agent must demonstrate to the satisfaction of the issuing magistrate that his information is reliable and that his information leads to the reasonable conclusion that criminal activity exists. The point, then, is not merely whether probable cause ex-

isted for the issuance of this warrant, but whether Agent Howson informed the Commissioner of facts sufficient for the Commissioner to determine whether probable cause existed. Aguilar v. State of Texas, supra; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); United States v. Lefkowitz, 285 U.S. 452, 464, 52 S.Ct. 420, 76 L.Ed. 877. The affidavit of Agent Howson is wholly inadequate. We cannot say that "probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based." United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

Petitioner's Motion to Suppress Evidence is hereby granted.