No. 1176, Misc. Sandoval *v.* California. Sup. Ct. Cal. Certiorari denied.

Mr. Justice Douglas, dissenting.

Police officers obtained warrants for the arrest of Coates and five others. They had been informed, by an informer not known to be reliable, that Coates concealed heroin and burglary loot in his home, that the house served as a narcotics headquarters, and that at least one "connection" contacted Coates there by telephone. Apparently this information had been partially corroborated by an independent investigation implicating Coates and the others in a burglary operation. Officers stationed at the house saw Coates and a woman leave. They arrested Coates, saw puncture marks on the woman's hands, and arrested her. A search of the woman's person uncovered narcotics.

The police then entered Coates' home and saw narcotics in plain view. They arrested the occupants and began an extensive search of the premises. During the search, a telephone rang and an officer answered it. A voice asked, "Is this Jessie?" The officer replied that it was. The caller said, "Man, where have you been? I've been waiting for you a long time. You were supposed to meet me some time ago." The officer replied that he had been delayed and would be along in a few minutes. The caller then said, "Well, hurry up, man, I can't stand

around with this stuff in my pocket on the street. I might get picked up." When the conversation ended, the officer asked Coates what it meant. Coates explained that he had arranged to pick up heroin from a person named Rudy, gave the police a description of Rudy and his car, and specified the meeting place. The officers rushed off to the designated place and arrested and searched petitioner, finding narcotics used at petitioner's trial for possessing narcotics.

The California Supreme Court held that the officers had probable cause to arrest petitioner. The entry into Coates' home was lawful because the discovery of the narcotics on the woman, together with the informant's information and the information from the independent investigation, gave the officers probable cause to believe that people in the house possessed narcotics. Since they were lawfully in the house the police could answer the telephone and conceal their identities in order "to learn of possible unlawful activities." 65 Cal. 2d 303, 308, 419 P. 2d 187, 190. The information given by Coates was confirmed when the officers saw petitioner. Thus, I assume that they had probable cause to arrest and search petitioner.

While we have sustained the validity of searches of the home of a person validly arrested (*Agnello* v. *United States,* 269 U. S. 20; *Harris* v. *United States,* 331 U. S. 145; *United States* v. *Rabinowitz,* 339 U. S. 56), we have stressed that the bounds of such searches are not unlimited. A search of the place where an arrest is made may be made "in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody . . . ." *Agnello* v. *United States, supra,* at 30. Over and over again we have emphasized that a search incident to arrest cannot be a general exploratory search, but must be narrowly confined. See, *e. g., United States* v. *Lefkowitz,* 285 U. S.

452; *Harris* v. *United States, supra,* at 152–153; *United States* v. *Rabinowitz, supra,* at 62. In those cases the search was designed to uncover fruits or instrumentalities of the crime for which the person was arrested. In this case the officer was engaged in a fishing expedition when he answered the telephone. He sought "to learn of possible unlawful activities." 65 Cal. 2d, at 308, 419 P. 2d, at 190. And, the "possible unlawful activities" about which he was curious were not confined to those on the part of Coates or even to those of the type which gave the officers justification for entering the house. The officer who answered the telephone and used artifice was engaged in a general, exploratory search to obtain evidence and leads incriminating anyone of any possible crime. Until the intercepted conversation, there was absolutely no lead connecting petitioner with any unlawful activity.

The permissible bounds of a search of the premises of an arrest have thus been extended. The import of such extension is dangerous. Police often lawfully enter a house to make an arrest. If the decision below is sustained the police are given a roving commission to do things condemned by the Fourth Amendment—as long as they remain in the home which they have taken over. They are given license to make a general, exploratory search which the Fourth Amendment was designed to prevent.

It might be argued that petitioner lacks standing to object to the unlawful police conduct. This would be on the theory that he had no possessory interest in the home subjected to the search. It should be noted that neither the California Supreme Court nor the State relied upon petitioner's lack of standing. We have liberally interpreted the provision of Rule 41 (e) of the Federal Rules of Criminal Procedure that a defendant must be a "person aggrieved" in order to suppress evidence in a federal court. See, *e. g., United States* v. *Jeffers,*

342 U. S. 48; *Jones* v. *United States,* 362 U. S. 257. Argument is at least warranted on this point.

For the reasons stated I would grant certiorari in this case.