THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK A. FAIRBANKS, Defendant-Appellant.

First District (5th Division) No. 83—2540

Opinion filed March 14, 1986.

Judith A. Halprin, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Richard A. Stevens, and Theodore Gailan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

This cause involves an appeal by defendant, Mark A. Fairbanks, from a conviction for two counts of armed robbery, one count of home

invasion and one count of residential burglary. Defendant refused an offer of 18 months' probation and chose a jury trial. All counts arose from a single event. Fairbanks received concurrent sentences of six years and four years. The statutes involved are sections 12—11(a)(1) (home invasion); 18—2(a) (armed robbery); and 19—3 (residential burglary) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, pars. 12—11(a)(1), 18—2(a) and 19—3.

In his appeal, Fairbanks contends the following compel a reversal of his conviction:

> (1) The failure of the State to prove that he was guilty beyond a reasonable doubt;

> (2) The admission of evidence against him which the State withheld from him despite his request therefore; and

> (3) The failure of the trial court to grant his motion for a new trial based on newly discovered evidence.

The evidence discloses that the victims, Mr. and Mrs. Fancher, were robbed in their home on August 14, 1982, by two masked men. Both of the Fanchers testified at trial and identified defendant as one of the masked robbers. Defendant's conviction is based primarily on this identification.

Mrs. Fancher testified that while at home around 11:30 p.m. on August 14, 1982, her husband rang the doorbell. She opened the door and two men, one of which held a knife on her husband, walked in. The men had loose nylon stockings over their faces. The two men demanded that Mr. Fancher get the money he kept in his bedroom. Mrs. Fancher also stated that the rooms were well lit and she could see the men's features through the loose, baggy stockings. Furthermore, she testified that the robbery took about 45 minutes and that she observed defendant under good lighting conditions for about half of that time.

Mr. Fancher testified that on that night, as he was getting groceries from his car, two men approached him, pulled him out of his car and struggled with him. One of the assailants had a knife. Using the knife, the men forced him up to his apartment. Once in the apartment, the men took money from Mr. Fancher's wallet and ordered him to open his bedroom safe. He stated that the men seemed to know the safe was located in the middle bedroom. Mr. Fancher was forced to open the safe as one of the men held the knife at his wife's throat. After taking the money from the safe and ransacking another bedroom, the robbers forced the Fanchers into the other bedroom. At this time, Mrs. Fancher saw a gun in defendant's hand. Defendant kept the Fanchers in their bedroom while the other robber carried the stolen items to the robbers' car. The robbers then forced the Fanchers into a

bedroom closet and left after warning them to stay quiet or defendant would kill them. When they felt it was safe, the Fanchers called the police from a neighbor's phone.

Shortly thereafter, Officer Phillip Bonini of the Hillside police department arrived at the Fancher home. He found the Fanchers in a state of "confusion" with the apartment in disarray. Officer Bonini testified that the Fanchers described the men as being in their early twenties, wearing gloves and nylon stockings over their faces. His report of the incident stated that "[b]oth offenders had worn nylon stockings on their faces, which concealed their identity." On the stand, the officer stated that what he wrote accurately reported what the Fanchers had told him the night of the robbery. He also said the victims told him that the stockings covered the robbers' faces, but that the Fanchers would still be able to identify them. No gun was mentioned in the police report. The police report stated that one robber was 5 feet 7 inches to 5 feet 9 inches tall, had a mustache, and was called "John." The second man was 5 feet 10 inches tall and had a very noticeable scar under his chin. Neither of the Fanchers later read or signed the report. During the trial, Mr. Fancher stated that Mrs. Fancher answered most of Officer Bonini's questions concerning the robbers' descriptions. Also, at trial, both Fanchers identified defendant as the taller robber, although he has no scar. The Fanchers said then that the shorter man had the scar and that defendant was the man who held the knife on Mrs. Fancher even though he had no scar. Both Fanchers also testified that the stockings were very light colored and loose fitting, thus permitting them to identify defendant as one of the robbers.

Several weeks after the robbery, Mr. Fancher signed a statement saying that he no longer wished to cooperate in the investigation of the robbery. Three and one-half months later, Mr. Fancher testified that he thought a car was following him. When he stopped in front of his home, the car passed him by and he followed it to a pizza shop. While following the car, Mr. Fancher called his wife on his car phone and gave her the license number of the car in case anything should happen to him. He went into the parlor, saw defendant and recognized him as one of the robbers. Mr. Fancher then went home and called the police the next day. The license number was registered in defendant's name. Subsequently, the Fanchers individually identified defendant from photographs and in separate lineups.

Before trial, defendant requested the names and addresses of the Fanchers' employees for a period of three years. There is no indication that the trial judge ever ruled on the motion, although the records

were not produced. At trial, when the State used employee records to impeach the testimony of defendant's wife and sister, defense counsel objected to the use of records which the judge had refused to give to the defense. The trial judge said that "that's a heck of a point for appeal ***."

Both defendant's wife and his sister testified to employment by the Fanchers prior to the robbery and also spoke of unpleasant encounters with Mr. Fancher in connection with their employment. Defendant's wife stated that her husband came into the office to drive her home from work on many occasions. Both women had to testify from memory as to the time and locations of their employment with the Fanchers. The State used employment records allegedly denied to the de-defense to impeach these defense witnesses. Also testifying for the defense were two friends of defendant, who stated that defendant and his family helped the witnesses move to Fox Lake on August 14 and spent the night at their Fox Lake home.

Defendant argues that the discrepancies in the Fanchers' identification and the lapse of time between Mr. Fancher's sighting of defendant in the pizza shop and his notification to the police create a reasonable doubt as to his guilt. Defendant contends that this reasonable doubt is reinforced by the fact that defendant's wife worked with Mr. and Mrs. Fancher in a small office for three months and yet, they did not remember her until shown their employment records. However, the Fanchers were quite certain that defendant never picked his wife up from work as she testified he frequently did.

The requested employment records indicate a prerobbery contact between the Fanchers and defendant's wife and sister, and possibly defendant himself.

■■■ The testimony of a single witness is sufficient for identification purposes even though contradicted by the accused, provided (1) that the witness had adequate opportunity to view the offender, and (2) that the in-court identification is positive and credible. (*People v. Martin* (1970), 47 Ill. 2d 331, 265 N.E.2d 685.) Here, the Fanchers were able to observe the robbers in well-lighted rooms for at least 20 minutes. They both stated that the stockings did not conceal or distort the robbers' faces. Additionally, a witness need not give a precise and accurate description of an offender's facial characteristics. (*People v. Henderson* (1971), 133 Ill. App. 2d 336, 273 N.E.2d 244.) Inaccuracies as to facial characteristics are not fatal, but simply are applicable to the weight of the identification testimony as evaluated by the jury. (*People v. Goodman* (1982), 109 Ill. App. 3d 203, 440 N.E.2d 345.) Similarly, contradictions between a witness' trial testimony and his pretrial

statements are matters of credibility for the jury. (*People v. Webb* (1975), 25 Ill. App. 3d 580, 323 N.E.2d 474.) Neither of the Fanchers ever read nor approved the description of the robbers in the police report. They were unwavering in their identification of defendant as one of the robbers in the photographs, the lineups, and in court. While there are a minority of cases that permit overturning a jury verdict on the basis of identification inconsistencies (see, *e.g., People v. Marshall* (1966), 74 Ill. App. 2d 472, 221 N.E.2d 128), we do not believe that is sufficient in this case. We prefer to follow the majority view as espoused in *People v. Yates* (1983), 98 Ill. 2d 502, 465 N.E.2d 1369. The *Yates* court stated that it is the jury's responsibility to resolve factual disputes, assess the credibility of the witnesses, and determine the weight and sufficiency of the evidence, and its judgment will not be reversed unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the guilt of the defendant remains. The facts in the present case are such that we cannot say the Fanchers' identification of defendant as one of the robbers was so improbable as to raise a reasonable doubt as to his guilt.

 Defendant also contends that the trial court erred in admitting evidence against him which he was denied access to in a pretrial discovery motion. Defendant had requested a list of employee names and addresses for 1977 and 1978. When the trial judge asked about the relevancy of the request, defendant replied that he was trying to establish a pattern of conduct of Mr. Fancher that affected defendant's wife and other employees. Off-the-record proceedings were then held to discuss the relevancy of the request. Defendant was not given the requested lists. At trial, the State used three checks to impeach the statements of defendant's wife that she never worked for the Fancher's after Mr. Fancher had allegedly made sexual advances towards her. The State contends that the checks were not part of the originally requested records, and furthermore, the checks were properly used to rehabilitate Mr. Fancher's character and credibility. The State also points out that defendant did not object to the introduction of the checks as evidence. Additionally, the judge's remarks concerning a "heck of a point for appeal" was made while the judge erroneously believed he had refused a defense request for the books and records of the Fancher's business. Furthermore, the State asserts that the dates of Mrs. Fairbank's employ was information within her control.

Trial courts have broad discretion in controlling discovery. (*People ex rel. Illinois State Dental Society v. Norris* (1977), 79 Ill. App. 3d 890, 398 N.E.2d 1163.) Discovery should be denied where there is insufficient evidence that the requested discovery is relevant. (*M. Loeb*

*Corp v. Brychek* (1981), 98 Ill. App. 3d 1122, 424 N.E.2d 1193.) A trial court's discovery ruling will not be overturned unless there is a manifest abuse of discretion. (*Dobbs v. Safeway Insurance Co.* (1978), 66 Ill. App. 3d 400, 384 N.E.2d 34.) Here, from the scant information in the record, *i.e.*, that defendant requested only the names and addresses of employees in order to show an alleged pattern of conduct of Mr. Fancher, it does not appear that the failure to give those names and addresses to defendant later was prejudicial to him at trial. The court also notes that where a witness' credibility is a crucial issue, the trial court should permit the parties wide latitude in impeaching and rehabilitating the witness' credibility so that the jury can gain access to all the necessary information and impressions in order to accurately evaluate credibility of the witness. (*People v. Adams* (1984), 129 Ill. App. 3d 202, 472 N.E.2d 135.) In the present case, a defense witness attacked Mr. Fancher's character and credibility, whereupon the State introduced checks to impeach the credibility of that witness. This was entirely proper, especially since those checks would not have been included in a list of names and addresses requested earlier by defendant. Accordingly, the court concludes that defendant's second argument is without merit.

■ Defendant's last argument that the denial of his motion for a new trial on the basis of newly discovered evidence is also meritless. Defendant claims that the fact that the police questioned at least four other persons about this home invasion before defendant was positively identified should have been disclosed by the State. However, this information did come to defendant's attention during trial during questioning of Detective Kudrna and Investigator O'Dea. It was up to defendant to follow up on the revelations by either requesting a continuance or by further questioning the police officers. To warrant the granting of a new trial for newly discovered evidence, it must appear that the existence of the new evidence was discovered after trial, and was not known before the verdict nor could it have been discovered before verdict by reasonable inquiry and due diligence. (*People v. Dunklin* (1982), 104 Ill. App. 3d 685, 432 N.E.2d 1323.) Defendant learned during trial that other persons had been questioned and did not use the diligence required to obtain more information. Thus, we must also dismiss this last argument of defendant.

For the above reasons, the decision of the trial court is affirmed.

Affirmed.

SULLIVAN, P.J., and LORENZ, J., concur.