(No. 65051.—
(No. 65168.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DAVID SHUKOVSKY, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, v. DAVID SHUKOVSKY (Matthew Chancey, Appellant).

*Opinion filed December 21, 1988.—Modified on denial of rehearing May 26, 1989.*

214

Josette Skelnik, of Robinson & Skelnik, of Elgin, and Jed Stone, of Waukegan, for appellant Shukovsky.

Kenneth R. Boyle and William L. Browers, of the State's Attorneys Appellate Prosecutor, of Elgin (Fred L. Foreman, State's Attorney, of Waukegan, of counsel), for appellant Chancey.

Neil F. Hartigan, Attorney General, of Springfield, and Fred L. Foreman, State's Attorney, of Waukegan (Kenneth R. Boyle and William L. Browers, of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

JUSTICE WARD delivered the opinion of the court:

On June 5, 1985, the defendant, David Shukovsky, was charged by information in the circuit court of Lake County with battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—3(a)(2)). Prior to trial, he had a subpoena *duces tecum* served on Laura Notson, a social worker with the Lake County State's Attorney's office, directing her to produce all materials relating to certain conversations she had with the complainant, the defendant's former

wife, Andrea Shukovsky, or with members of the Lake County State's Attorney's office or any police agency. The circuit court ordered Assistant State's Attorney Matthew Chancey, Notson's supervisor, to comply with the subpoena and, upon his refusal, found him in contempt of court. While an appeal from that judgment was pending, the circuit court granted the defendant's motion for discharge on the ground that his right to a speedy trial under section 103—5(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 103—5(b)) had been violated. The State appealed, and the appellate court, after consolidating the appeals, affirmed the contempt judgment but reversed the judgment discharging the defendant and remanded for further proceedings. (151 Ill. App. 3d 966.) We allowed Chancey's and the defendant's petitions for leave to appeal under our Rule 315(a). 107 Ill. 2d R. 315(a).

The subpoena *duces tecum* directed Laura Notson to produce:

"All notes, memorands [*sic*] and file materials of your conversations with Andrea Shukovsky relative to the above-captioned matter, as well as any notes, memoranda or file materials taken in connection with discussions with any member of the Lake County State's Attorney's Office or any police agency involving the above-captioned matter and Andrea Shukovsky's complaints against David Shukovsky relative thereto."

Assistant State's Attorney Matthew Chancey moved to quash the subpoena on the grounds that it was overbroad, that the material was not discoverable or was not subject to the subpoena because of the work-product privilege or that the defendant could not obtain a subpoena *duces tecum* without first attempting to obtain the materials through discovery. Following a hearing, the court denied the motion and ordered that the materials

be produced for the court by July 3 for an *in camera* inspection.

On that date, a hearing was held on the State's motion to reconsider the denial of its motion to quash. Chancey stated that he was Notson's supervisor and that he had the materials in his possession. He also said that because the court indicated that it would permit the defendant access to the materials called for by the subpoena if the court found that though not discoverable, they were admissible, he would not produce the materials. The court then held Chancey in contempt and fined him $10. On August 2, 1985, Chancey filed a notice of appeal, and the State's Attorneys Appellate Prosecutor's office filed a brief on his behalf.

On July 8, 1985, the defendant moved for a trial continuance on the ground that without the materials requested in the subpoena he would not be able to present an effective defense. The defendant also moved for the appointment of a special prosecutor in the contempt proceeding on the ground that the contempt judgment had been entered against an assistant State's Attorney. The court denied the defendant's motion for a special prosecutor but continued the cause to August 20. Although the State announced its readiness for trial, the court charged the delay to the State for purposes of the speedy-trial statute because of Chancey's failure to turn over the subpoenaed materials. Thereafter, the cause was continued several times and on each occasion the court stated it would charge the delay to the State because of Chancey's refusal to turn over the subpoenaed materials.

On December 18, 1985, the defendant moved for discharge under the speedy-trial guarantees in section 103—5(b) of the Code of Criminal Procedure (Ill. Rev. Stat. 1985, ch. 38, par. 103—5(b)). That section provides:

"Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant ***." (Ill. Rev. Stat. 1985, ch. 38, par. 103—5(b).)

The defendant alleged that more than 160 days had passed since he filed his demand for a speedy trial on June 21 and that the delay in bringing the cause to trial was attributable to the State. The court granted the motion, and the State appealed.

The appellate court consolidated the appeal with the appeal from the contempt judgment and, upon the defendant's motion, designated the People of the State of Illinois as appellee in the contempt proceedings. The court appointed the Attorney General to represent the People, and that officer filed a brief seeking affirmance of the circuit court's order of contempt. The State's Attorneys Appellate Prosecutor's office, on behalf of Assistant State's Attorney Chancey, moved to strike the Attorney General's brief and to vacate the appellate court's order designating the People of the State of Illinois as appellee. The motion stated that, as Chancey was convicted of contempt because of his good faith conduct on behalf of "the People," a conflict of interest had been created by the court's designation of "the People" as appellee.

As stated, the appellate court denied the State's Attorneys Appellate Prosecutor's office's motion, affirmed the contempt judgment, but reversed the trial court's order discharging the defendant on speedy-trial grounds and remanded for further proceedings. 151 Ill. App. 3d 966.

In appeal No. 65168, Assistant State's Attorney Chancey begins his challenge to his contempt conviction with the contention that the appellate court erred in designating "the People" as appellee and in appointing the

Attorney General to sustain the contempt judgment on appeal. Chancey says that he subjected himself to the contempt conviction in good faith on behalf of "the People" in order to test the validity of the circuit court's pretrial order directing him to comply with the defendant's subpoena. He says that when an attorney is held in contempt for taking a position on behalf of a client, an appeal from that judgment is in reality an appeal by the client. Chancey argues that it was therefore improper for the appellate court to designate "the People" as appellee and to appoint the Attorney General, particularly considering that the Attorney General has taken an opposing position to his position on the validity of the subpoena. The appellate court's appointment of the Attorney General, he says, rendered his counsel, the State's Attorneys Appellate Prosecutor's office, "powerless" to defend him on appeal. This is because, as the Appellate Prosecutor's office is authorized to represent only "the People," it cannot represent a State's Attorney in his or her individual capacity. (See Ill. Rev. Stat. 1985, ch. 14, par. 204.01.) Parenthetically, Chancey does not state who he considers should have been designated as the appellee on this appeal.

It of course has been long recognized that exposing one's self to contempt proceedings is an appropriate method of testing the validity of a court order. (See *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 189; *Monier v. Chamberlain* (1966), 35 Ill. 2d 351.) When an attorney is held in contempt, it does not follow that an appeal from the contempt judgment is the appeal of the party for whose benefit the attorney acted in contempt of the order of court.

Contempt proceedings are "original special proceeding[s], collateral to and independent of the case in which the contempt arises." (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 172; *Hill v. Jeffery Co.* (1920), 292

Ill. 490, 493.) There are civil and criminal proceedings. They have been simply defined by this court:

"Proceedings in the nature of criminal contempt have been defined as those directed to preservation of the dignity and authority of the court, while *** civil contempts are those prosecuted to enforce the rights of private parties and to compel obedience to orders or decrees for the benefit of opposing parties. [Citations]." *People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 409.

The circuit court's order imposing a fine on Chancey and the circumstances, including the understanding that an appeal would be taken to test the validity of the court's position, show that the order was to be criminal in nature and was to punish for the conduct of refusal. The purpose of criminal contempt proceedings, as stated, is to preserve "the dignity and authority of the court," that is, to maintain respect for the judicial system. "The need to vindicate a court's authority is *** satisfied by ensuring that an alleged contemnor will have to account for his or her behavior in a legal proceeding, regardless of whether the party is ultimately convicted or acquitted." *Young v. United States ex rel. Vuitton et Fils S.A.* (1987), 481 U.S. 787, 796 n.8, 95 L. Ed. 2d 740, 752 n.8, 107 S. Ct. 2124, 2132 n.8.

When an attorney subjects himself or herself to contempt proceedings in order to test the validity of a court order, it is the attorney who is the alleged contemnor and is the one who must account for the conduct; it is not the party for whom the attorney acts. Indeed, it was Chancey whom the circuit court held in contempt, and it was he who paid the fine. Illustrating what we have said was this colloquy following the trial court's announcement that it was finding Chancey in contempt:

"THE COURT: I guess we will hold the State's Attorney in contempt and fine him—how about $10, and we will see what happens. Good luck, gentlemen.

MR. CHANCEY: When you say, "State's Attorney," do you mean myself since I am the one, I am the supervisor over Miss Notson? I am the one that is taking the position. I take it that is so the record is clear.

THE COURT: The individual standing before the Court, I suppose, is in direct contempt."

The appellate court did not err in designating "the People" as appellee for purposes of the contempt proceeding.

It was the interest of "the People" that was involved and it was appropriate for the court to appoint the Attorney General in the appeal. A court's inherent authority to initiate contempt proceedings understandably includes authority to appoint an attorney to represent the public interest in vindication of the court's authority. (See *Young v. United States ex rel. Vuitton et Fils S.A.* (1987), 481 U.S. 787, 793, 95 L. Ed. 2d 740, 749-50, 107 S. Ct. 2124, 2130.) In *Marcisz v. Marcisz* (1976), 65 Ill. 2d 206, this court held that contempt proceedings may be prosecuted "by counsel for a litigant, by the State's Attorney or by an *amicus curiae* appointed by the court" (65 Ill. 2d at 210). (See also *People v. Goss* (1957), 10 Ill. 2d 533.) As the appellant was an assistant State's Attorney, it surely would have been inappropriate to appoint an attorney from that office under the circumstances here. Too, there was nothing inconsistent in the Attorney General's taking a position different from that of the State's Attorney on the issue of the propriety of the court's order denying the motion to quash. See *People v. Walker* (1988), 119 Ill. 2d 465.

The second contention of Chancey is that the contempt conviction should be overturned because it was based on an improper denial of the People's motion to

quash the defendant's subpoena *duces tecum.* In reviewing the contempt judgment we must examine the propriety of the court's order directing Chancey to comply with the subpoena which, it is said, was improperly violated. If the order were invalid, the contempt judgment must be reversed. *People v. Verdone* (1985), 107 Ill. 2d 25, 30; *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 174.

Chancey argues that the court's order directing him to comply with the subpoena is invalid on the ground that the defendant did not make a sufficient showing to entitle him to the use of the subpoena. Chancey contends that in misdemeanor prosecutions (the defendant here was charged with misdemeanor battery), a defendant must first seek production of materials by way of discovery before calling for a subpoena *duces tecum.* He asserts, too, that even if the material were not discoverable, the defendant failed to make an adequate showing under *United States v. Nixon* (1974), 418 U.S. 683, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 to entitle him to the subpoena.

Contrary to Chancey's claim, the defendant was not required to proceed by way of discovery before obtaining a subpoena *duces tecum.* A subpoena is a judicial compulsory process assured by the sixth amendment to the Constitution of the United States, and is applicable in "all criminal prosecutions." (*Washington v. Texas* (1967), 388 U.S. 14, 23-24, 18 L. Ed. 2d 1019, 1025, 87 S. Ct. 1920, 1925; U.S. Const., amend. VI; *People ex rel. Fisher v. Carey* (1979), 77 Ill. 2d 259, 265.) In *Fisher,* this court stated that "[our] discovery rules may not, without substantial reason *** limit a criminal party's access to a court's compulsory process." (77 Ill. 2d at 268.) The court held that a defendant may seek a pretrial subpoena to gather discoverable material without first having attempted to obtain the materials through

discovery. (77 Ill. 2d at 268.) Although the defendant in *Fisher* was charged with a felony, and this defendant with a misdemeanor, the State has given no persuading reason for distinguishing between the criminal grades. We further observe that, in any event, the defendant, charged with a misdemeanor, had no right to discovery. See 107 Ill. 2d R. 411; *People v. Schmidt* (1974), 56 Ill. 2d 572.

The appellate court stated that, as there was no court reporter at the hearing on the State's motion to quash the defendant's subpoena and no transcript of the proceeding, it could not review the correctness of the order to comply. It held that because of the absence of a complete record, which is the obligation of the appellant to furnish, it was required to presume that the defendant presented evidence and witnesses to justify the issuance of the subpoena.

The affirmance of a judgment of contempt, however, cannot rest only on presumptions that the defendant made an adequate showing justifying issuance of the subpoena and, second, that the order to comply which the contemnor (Chancey) refused to obey was a proper order. An accused has a right to have the decision of the trial judge finding him in contempt reviewed, and justification for that order must be found in the order itself or in conjunction with the report of proceedings. (*People v. Tomashevsky* (1971), 48 Ill. 2d 559, 564.) "All the essential facts must be fully set forth and no part thereof can be supplied by presumptions or inferences." (*People v. Loughran* (1954), 2 Ill. 2d 258, 263.) As this court put it in *People v. Tavernier* (1943), 384 Ill. 388, 393:

> "The cases all recognize the power of courts of record to conduct proceedings for contemptuous acts committed in the presence of the court and to administer punishment in proper cases. This may include a fine or jail sentence, or both. When a court thus instantly punishes without

further proof or examination, without plea, trial or issue, it is exercising a power which is not recognized in other proceedings and one which may be arbitrarily used. To safeguard against abuse a review may be had, and since the case is submitted to a reviewing court on the order of commitment, the law imposes upon those who defend the entry of the order the burden of having it contain facts sufficient to show that the court was warranted in entering the order."

See also *People v. Tomashevsky* (1971), 48 Ill. 2d 559, 564.

The common law entry for July 3, 1985, the date of the hearing on the motion to reconsider the denial of the State's motion to quash, simply indicates that counsel was present and that the court found Chancey in contempt "for not complying with the Court's order filed July 1, 1985." While the hearing on the State's motion to quash the defendant's subpoena was not transcribed, the hearing on the State's motion to reconsider the denial of the motion to quash and the hearing on the motion to reconsider the judgment of contempt were taken down and transcribed.

At the hearing on Chancey's motion to reconsider the denial of the motion to quash, the defendant stated that the allegations set out in his motion to dismiss the information, which the trial court had previously denied, "sets forth the history of the case." In the motion, the defendant alleged that an identical charge had been brought against him also in Lake County on January 25, 1985, which had been dismissed on the State's own motion. The defendant further alleged that the complainant, Andrea Shukovsky, had filed numerous false complaints against him that were determined to be unfounded by the authorities and that from his divorce file he had learned that the complainant suffers from "DSM III," which according to the defendant, is a diagnosed mental

illness. The defendant stated that after he disclosed this information to the State's Attorney's office, the charges were dismissed for "insufficient evidence" and his arrest record was expunged. Neither the State nor Chancey has denied the factual allegations set out in the defendant's motion.

We consider that a sufficient record is before us to determine whether the defendant was entitled to the materials called for in the subpoena. Though we are without the benefit of a transcript of the hearing on the State's motion to quash the subpoena, the later two hearings were transcribed and the defendant adequately set out his reasons for attempting to obtain the materials called for in the subpoena. Any objection Chancey might have had as to the insufficiency of the record he has waived by failing to raise the question in the circuit court or the appellate court. *Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 543.

On this record, we judge that the defendant made the showing required to justify the issuance of a pretrial subpoena. In *United States v. Nixon* (1974), 418 U.S. 683, 699-700, 41 L. Ed. 2d 1039, 1059, 94 S. Ct. 3090, 3103, the Court set out the requirements for the issuance of a subpoena prior to trial:

"(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' "

See also *People ex rel. Fisher v. Carey* (1979), 77 Ill. 2d 259, 269.

Chancey states that the defendant's sole purpose for obtaining the materials called for in the subpoena was to challenge the credibility of the complainant. He says that under *Nixon*, the need for impeachment evidence is generally insufficient to require its production in advance of trial. (*Nixon*, 418 U.S. at 701, 41 L. Ed. 2d at 1060, 94 S. Ct. at 3104. See also *United States v. Carter* (1954), 15 F.R.D. 367, 371.) We disagree.

It appears from the language in the defendant's motion to dismiss that the defendant's purpose in seeking the material described in the subpoena, however, was not simply to obtain information to impeach the testimony of the complainant. He also sought to establish that the State's Attorney was abusing discretion in bringing the charges against him. As stated above, the State's Attorney nol-prossed identical charges brought against the defendant for "insufficient evidence," and then later refiled the charges. The defendant may reasonably seek to determine what caused the State's Attorney to refile charges the prosecutor did not consider appropriate, and such information might be important to the defendant in properly preparing for trial. We judge that the defendant has made a sufficient showing entitling him to the materials called for in the subpoena and that the court's denial of the motion to quash was proper. Accordingly, the judgment of contempt is affirmed.

In appeal No. 65051, the defendant argues that the appellate court erroneously reversed the trial court's order which discharged him on the ground that his right to a speedy trial under section 103—5(b) of the Code of Criminal Procedure (Ill. Rev. Stat. 1985, ch. 38, par. 103—5(b)) had been violated. On June 21, 1985, the defendant, who was on bond, filed a speedy-trial demand. On July 3, 1985, at the hearing on the State's motion to quash the defendant's subpoena, Assistant

State's Attorney Matthew Chancey was held in contempt, and on August 2, 1985, he filed a timely notice of appeal. Following several continuances, the trial court on December 20, 1985, granted the defendant's motion for discharge on the ground that the State had failed to bring him to trial within 160 days as required by section 103—5(b).

The circuit court held that although the State had expressed its willingness to proceed to trial, its failure to comply with the subpoena was the cause of the delay of trial. The appellate court reversed on the ground that the filing of the notice of appeal by the assistant State's Attorney stayed the prosecution and, therefore, the circuit court was without jurisdiction to enter the order discharging the defendant.

Generally, upon the proper filing of a notice of appeal, "the appellate court's jurisdiction attaches *instanter*, and the cause is beyond the jurisdiction of the trial court." (*Daley v. Laurie* (1985), 106 Ill. 2d 33, 37; *City of Chicago v. Myers* (1967), 37 Ill. 2d 470, 472.) The court retains jurisdiction, however, where the matter appealed from is independent of, and collateral to, the case before the trial court (*In re Marriage of Petramale* (1981), 102 Ill. App. 3d 1049, 1053; *Horzely v. Horzely* (1979), 71 Ill. App. 3d 542, 545), *e.g.*, an order of contempt (see *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 172).

Here, the appellate court held, however, that while the contempt proceeding was collateral to the criminal prosecution, the prosecution was dependent on the resolution of the subpoena and contempt issues. The court stated that the entering of the contempt order was a situation similar to that where there is a pretrial order suppressing evidence from which the State appeals, with the result that the time for discharge under the speedy-trial

statute does not run while the appeal pends. See 107 Ill. 2d R. 604(a)(4); *People v. Young* (1980), 82 Ill. 2d 234.

The situation here, however, is distinguishable. There was not an appeal on behalf of the People but rather an appeal by the assistant State's Attorney as the contemnor. Consequently, Supreme Court Rule 604(a)(4), which provides that the time for discharge will not run while an appeal by the State is pending, is not applicable. Also, in any event, in those instances in which the State is permitted to appeal under Rule 604(a)(1), the order of the court appealed from is one which has terminated or at least impeded the State's ability to proceed with the prosecution, *e.g.*, suppression of evidence. (See *People v. Flatt* (1980), 82 Ill. 2d 250, 264-65.) The order here obviously did not affect the State's ability to proceed with the prosecution. If there was an effect of the order, it was upon the defendant's ability to present a defense. The trial court retained jurisdiction despite the appeal by Assistant State's Attorney Chancey from the judgment of contempt.

Further, we judge that the trial court properly held that the defendant's statutory assurance of a speedy trial was violated. The circumstances here were out of the ordinary. Judging by the defendant's motion, the State apparently, after considering investigative materials assembled by the defendant, including a claim of evidence of the complainant's mental condition, in effect dropped the criminal charge. They thereafter, without notice or explanation to the defendant, filed a new criminal information based on the identical incident alleged. The subpoena *duces tecum* was directed to conversations of the social worker, not only with the defendant's former wife, but with members of the State's Attorney's staff or any police agency. The trial court's request for an *in camera* inspection of the materials was rejected by the State.

In light of the State's refusal to consent to the court's examining *in camera* the materials sought, the court could only speculate at the purpose in the defendant's seeking the subpoena *duces tecum*. The defendant sought materials concerning conversations of the social worker not only with the defendant's former wife, but with members of a police agency, the State's Attorney's staff and any materials that might well relate to the defendant's preparation of a defense. Under the circumstances we consider the defendant's right to a speedy trial should be enforced. *People v. Terry* (1975), 61 Ill. 2d 593, 596; *People v. Nunnery* (1973), 54 Ill. 2d 372, 376.

For the reasons given, the judgment of the appellate court is affirmed as to the order of contempt and reversed as to the order discharging the defendant, and the trial court is affirmed as to this order.

> *No. 65051 — Appellate court reversed;*
> *trial court affirmed.*
> *No. 65168 — Appellate court affirmed.*

JUSTICE STAMOS took no part in the consideration or decision of this case.

JUSTICE RYAN, concurring in part and dissenting in part:

I dissent from that part of the opinion of this court which holds that the defendant's right to a speedy trial was violated. I would affirm the appellate court in this case, which held that the trial court had no jurisdiction to consider or enter an order of discharge once an appeal from the contempt order had been filed. 151 Ill. App. 3d 966, 972-73.

The opinion of this court finds that the circuit court retained jurisdiction to proceed with the criminal case, although the contempt order had been appealed, because

the order appealed from was independent of and collateral to the case before the trial court. The assessment of the contempt order as being independent of and collateral to the criminal case is correct. However, as noted by the appellate court, the criminal case was not independent of the contempt proceeding. The State had answered ready for trial, but the defendant could not present his defense without the information the court ordered the State to produce, and the propriety of the court's order on the State to produce had to be determined in the appeal from the contempt order.

Thus, the criminal case was dependent on the outcome of the contempt proceeding, and the trial court should not have proceeded in the criminal case before the determination of the contempt issue. If, on review, it should be determined that the trial court was correct in ordering the State to produce, the defendant would then be entitled to receive the information sought and could then fashion his defense. If, however, the court, on review, would determine that the trial court was wrong in its production order, then the case would have to proceed without the information ordered produced, as the State was ready to do before the speedy-trial period had run. The court should not have entertained any order disposing of the criminal case until the contempt question had been resolved. Suppose this court were to hold that the trial court was wrong in entering its order to produce? Under the holding of this opinion, we would be faced with the anomaly of the defendant's being discharged as a result of the State's not having produced the information, although the State would have been correct in not complying with the production order.

For the reasons stated, I would affirm the order of the appellate court, and I dissent from that portion of this court's opinion resolving the speedy-trial issue.

JUSTICE MILLER joins in this partial concurrence and partial dissent.

## MODIFICATION ON DENIAL OF REHEARING

We judge that this court's judgment should be and is hereby vacated insofar as it affirms the appellate court's judgment and the order of the trial court holding Assistant State's Attorney Matthew Chancey in contempt of court. The record shows that the trial judge understood that Assistant State's Attorney Chancey's contempt was purely a formal one and that the motivation for his refusal to comply with the subpoena *duces tucem* was solely to permit, through an appeal, examination of a question, the answer to which was not free from doubt. Accordingly, the concerned order of the appellate court and the order of the trial court holding Mr. Chancey in contempt are vacated.