JOHN WEHMEIER *et al.*, Plaintiffs-Appellees, v. UNR INDUSTRIES, INC., *et al.*, Defendants-Appellants.—BILLY L. GRAY *et al.*, Plaintiffs-Appellees, v. UNR INDUSTRIES, INC., *et al.*, Defendants-Appellants.

Fourth District   Nos. 4—90—0447, 4—90—0538 cons.

Opinion filed December 20, 1990.—Modified on denial of rehearing June 25, 1991.

Michael D. Freeborn, Steven M. Hartmann, and Brian P. Norton, all of Freeborn & Peters, of Chicago, for appellants.

James Walker, Ltd., of Bloomington, for appellees.

JUSTICE GREEN delivered the opinion of the court:
The supremacy clause of the United States Constitution provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof *** shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby ***." (U.S. Const., art. VI.)

The Constitution also states:

"The Congress shall have Power ***;

                    * * *

To establish *** uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const., art. I, §8.

■■ In chapter 11 of the Bankruptcy Code (Code) (11 U.S.C. §1101 *et seq.* (1988)), Congress has provided for reorganization plans for bankrupts. In section 1141(a) of the Code, Congress has set forth that when such a plan has met court approval, the plan is "binding" on all creditors, with exceptions not applicable here (11 U.S.C. §1141(a) (1988)). In this case, plaintiffs obtained valid judgments in the circuit court of McLean County against a trustee of a trust (Trust) subject to a plan created pursuant to section 1141(a) of the Code. Acting under otherwise valid Illinois procedures to enforce judgments, at plaintiffs' request, the circuit court ordered the Trust to pay the judgments and held it in contempt when it failed to do so. The Trust has appealed.

We hold that because of the supremacy clause, the Code and the orders of the bankruptcy court acting pursuant thereto controlled over otherwise valid Illinois statutes, supreme court rules, common law principles, and State court orders involved in the plaintiffs' attempts to enforce their judgments and rendered the attempt by the circuit court to enforce the judgments plaintiffs had obtained against the Trust void.

On October 28, 1988, an order of the bankruptcy court of the Southern District of New York confirming the second amended and restated plan of reorganization (Plan) for Johns-Manville Corporation and affiliated entities (Corporation) pursuant to chapter 11 of the Code became final. (*In re Johns-Manville Corp.* (S.D.N.Y. 1986), 68 Bankr. 618, *aff'd* (S.D.N.Y. 1987), 78 Bankr. 407, *aff'd* (2d Cir. 1988), 843 F.2d 636.) The major thrust of the Plan was the creation of the Trust to which we have referred. The assets of the Trust consisted of 80% of the common stock of the Corporation, certain insurance proceeds, cash, accounts receivable, and two bonds paying the Trust $75 million per year starting in 1991.

As is widely known, many of the products manufactured by the Corporation contained asbestos, and the bankruptcy of the Corporation arose from the tremendous number of tort claims proved against

it. The Plan was perceived by the bankruptcy court as the best way to eventually pay all claimants. Its theory was to keep the Corporation alive as a viable entity and to use most of the profits for the purpose of paying claims over a substantial period of time. The trustees were given great discretion as to when to make payments to claimants.

At the time of the approval of the Plan, plaintiffs had suits in tort pending in the circuit court of McLean County seeking recovery against the Corporation, and the Trust was substituted as defendant in those cases. Continuation of those cases as a method of liquidating those claims was consistent with the Plan and the Code and was allowed by the terms of the Plan. After a trial by jury in consolidated cases, verdicts were obtained on December 21, 1989, in favor of the various plaintiffs and against the Trust. On May 1, 1990, after reducing the verdicts for amounts received from other sources and denying various post-trial motions, the circuit court entered judgments in favor of the following plaintiffs and against the Trust as follows:

| | |
|---|---|
| William and Hazel Cochran | $264,499 |
| Joyce Schultz, individually and as administrator of the estate of Calvin Schultz, deceased | $141,759 |
| John Wehmeier | $593,054.33 |
| Helen Bratcher, individually and as administrator of the estate of Ray Bratcher, deceased | $196,652 |

Apparently dissatisfied with and frustrated by the refusal of the Trust to make any payment upon the plaintiffs' judgments, on May 8, 1990, the plaintiffs served the Trust with citations to discover assets which directed the Trust to produce an officer to appear before the circuit court of McLean County on May 15, 1990, concerning the assets and income of the Trust. The Trust filed objections which included, *inter alia*: (1) the bankruptcy court had exclusive jurisdiction to resolve disputes concerning the trust agreement; (2) as the Plan gave the trustees great discretion in making payments, absent bad faith, fraud, or abuse of that discretion, none of which were alleged, the circuit court should not interfere with the exercise of that discretion by the trustees; and (3) the citation was improper under sections 2—1402(b)(1) and (c) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, pars. 2—1402(b)(1), (c)), which concern court orders requiring a judgment debtor to make payment to satisfy a judgment when others may also have claim to the judgment debtors' property.

On May 31, 1990, the circuit court overruled the Trust's objections and ordered the Trust and its trustees and executive director to

pay the judgments before June 4, 1990. The Trust has appealed this order.

On June 19, 1990, pursuant to plaintiffs' petition, the circuit court ordered the Trust to show cause why it should not be held in contempt for failure to make the payments ordered on May 31, 1990. On July 19, 1990, the circuit court held the Trust in civil contempt for its failure to pay pursuant to the May 31, 1990, decree, and ordered the Trust to pay plaintiffs $5,000 per day until the judgments were satisfied. The Trust also appeals the order.

The Plan clearly permitted suits against the Trust in State courts to establish tort claims arising from the conduct of the Corporation. Nothing in the Plan indicated the State courts should control the distribution of the assets of the Fund in the payment of claims. Any such procedure would obviously create chaos.

The supremacy of procedure under the Code over conflicting procedures is illustrated by the decision in *Perez v. Campbell* (1971), 402 U.S. 637, 29 L. Ed. 2d 233, 91 S. Ct. 1704. A judgment had been obtained in a State court in Arizona against a husband and wife for personal injuries and property damage arising from an automobile collision and remained unpaid. The driver husband was uninsured and, under legislation of that State, the husband and wife's failure to timely pay the judgment or furnish security for its payment required a suspension of both of their driving privileges. After obtaining a discharge in bankruptcy, they were still denied that privilege. After their request for a declaratory judgment in a Federal district court, the United States Supreme Court ultimately held they were entitled to driving privileges because, under the supremacy clause, the provisions of the Code prevailed over the State legislation.

■ The *Perez* Court concluded the purpose of the State legislation was to coerce payment of the tort judgment which was in conflict with the purpose of the Code to give debtors a fresh start free from the pressure of prior debt. Accordingly, the State legislation was deemed invalid to the extent it operated to coerce payment of a debt discharged in bankruptcy. Similarly, State laws in regard to preferences among creditors have been held preempted by those set forth in the Code. *In re Smith-Douglass, Inc.* (4th Cir. 1988), 856 F.2d 12, 15-16; *Elliott v. Bumb* (9th Cir. 1966), 356 F.2d 749, 754-55.

■ Here, plaintiffs, dissatisfied with the operation of the Plan, sought to use Illinois procedures for the collection of judgments. The purpose of these procedures is to enable judgment creditors to fairly recover from judgment debtors. The plaintiffs were deserving judgment creditors under a judgment which had not been stayed, and the

circuit court sought to protect their rights. However, under the constitutional power given Congress to enact laws on bankruptcy, legislation on that subject is supreme, and a major purpose of those laws is to provide for a distribution of the bankrupt's estate that is as fair as possible to all creditors. The circuit court clearly infringed upon the Federal power in this case in ordering payment to plaintiffs from funds of the Trust. In so doing, it exceeded its jurisdiction. The May 31, 1990, order for payment was void. It cannot support the contempt order. *People v. Shukovsky* (1988), 128 Ill. 2d 210, 222, 538 N.E.2d 444, 448.

We reverse the judgments of May 31, 1990, and July 19, 1990.

Reversed.

STEIGMANN and KNECHT, JJ., concur.