THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. JUAN ANTONIO PEREZ, Defendant-Appellee (Ronald H. Grimming, Deputy Director, Illinois State Police, Contemnor-Appellant).—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. RAYMOND RIVERA, Defendant-Appellee (Ronald H. Grimming, Deputy Director, Illinois State Police, Contemnor-Appellant).— THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. TERRY Mc-CUTCHEON, Defendant-Appellee (Ronald H. Grimming, Deputy Director, Illinois State Police, Contemnor-Appellant).

Fifth District    Nos. 5—92—0461, 5—92—0499, 5—92—0672 cons.

Opinion filed February 1, 1994.—Rehearing denied March 15, 1994.

466

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Alison E. O'Hara, Assistant Attorney General, of counsel), for appellant.

Lou J. Viverito, of Taylor Law Offices, P.C., of Effingham, for appellees Juan Antonio Perez and Raymond Rivera.

No brief filed for appellee Terry McCutcheon.

JUSTICE WELCH delivered the opinion of the court:

The appellant, Ronald H. Grimming, Deputy Director of the Illinois State Police, appeals from the orders of the circuit court which held him in indirect civil contempt for failing to produce certain documents which defendants contend are necessary to establish whether the traffic stops that ultimately led to their arrests involving cannabis were pretextual. Imposed sanctions have been stayed pending these appeals. On April 16, 1993, upon appellant's motion, this court ordered the three cases consolidated for purposes of argument and decision only.

On August 30, 1991, defendant Juan Antonio Perez was charged in a four-count criminal information in Effingham County No. 91—CF—185 with violating various sections of the Illinois Cannabis Control Act (Ill. Rev. Stat. 1991, ch. 56$\frac{1}{2}$, par. 701 *et seq.*) and with unlawful possession of cannabis without paying the appropriate cannabis tax (Ill. Rev. Stat. 1991, ch. 120, par. 2160). Prior to trial, Perez filed a motion to suppress evidence. A subpoena *duces tecum* was issued to Sgt. Thomas Oliverio, of the Illinois State Police, which commanded that he was to bring to the Effingham County courthouse records of his employment by any law enforcement agency, records of attendance at training programs or schools where the subject matter was related to cannabis and controlled substance investigations, copies of duty assignments, records of traffic stops made and cannabis and controlled substance investigations made since being transferred to District 12 headquarters, records of all consents to search in connection with traffic stops since being assigned to District 12, and any records of advance notice that defendant Perez would be travelling through Illinois on August 29, 1991. Oliverio had stopped Perez, who was driving in Illinois. A second subpoena *duces tecum* was issued to Captain Roger McIntire of the Illinois State Police to

bring copies of duty assignments, activity logs, and schedules of Thomas Oliverio, records of all traffic citations and warnings issued by Oliverio, records of all cannabis and controlled substance investigations in which Oliverio participated, and records of all consents to search obtained by Oliverio in connection with traffic stops. The second subpoena also requested activity logs for Trooper Jane Middleton and Trooper Roger Webb for each day during the week of August 26, 1991, the activity log of canine "P.C." in connection with Oliverio's traffic stops, records of advance notice that Perez would be travelling through Illinois, and Illinois State Police policy concerning troopers riding together in a single police vehicle.

The Attorney General of the State of Illinois, on behalf of McIntire and Oliverio, filed a motion to quash subpoena and for protective order.

McIntire and Oliverio filed affidavits which stated, "Deputy Director, Ronald H. Grimming is the commanding officer in charge of the Division of State Troopers and has authority to control the release of the records of the Division." Appellant was substituted for McIntire and Oliverio. Appellant's affidavit states that he is the "ultimate keeper of the records for the Division of State Police."

At the March 20, 1992, hearing on the motion to quash subpoena, the assistant Attorney General argued that the material sought by defendant is not required to be disclosed by statute or case law and is not relevant to the facts of defendant's case. The assistant Attorney General further argued that defendant's requests are overbroad and unduly burdensome and the requests concerning police procedure or informants are privileged work products and, therefore, not discoverable.

Defendant argued that Oliverio testified at the preliminary hearing that defendant's vehicle was initially stopped because two balls of a trailer hitch obscured one of the numbers of the pickup truck's license plate and because the truck was observed to travel $1^1/_2$ feet over the white line on the edge of the road. Defendant reasoned that if Oliverio had never before stopped a vehicle for such violations, then the stop was a pretextual stop. Police training procedures would indicate that traffic stops should not be made unless there is a solid violation, and equipment violations of a minor nature and insignificant speeding violations should not be used in order to investigate the potential for other criminal activity. Defendant further argued the documents sought were necessary to establish whether the stop was a pretextual stop or a "traffic stop that reasonably would have been made in the absence of an intention to investigate other criminal activity." Defendant did not ask for the

identity of any informant but whether the State Police had advance notice that defendant would be traveling through Illinois. Defendant requested the duty assignments of Oliverio in order to determine if he was truly a patrol officer or had a limited assignment to conduct traffic stops in order to further investigate cannabis or controlled substance offenses. The request for production was made to prepare for the hearing on defendant's motion to suppress evidence and not to burden the State police.

The assistant Attorney General responded that the burden of production is unreasonable in light of the facts of the case.

On March 26, 1992, the court denied the motion to quash subpoena. The court found that the documents sought by subpoena *duces tecum* are relevant to the issue raised in defendant's motion to suppress evidence. The court further found, assuming, *arguendo*, that the subpoenas are overbroad and oppressive, that a general representation by counsel, unsupported by affidavit or direct evidence by persons who would actually have to conduct the search for the documents, is inadequate to support such objection. The court lastly found that any general claim of privilege in work product is premature and should be made as to specific documents produced and available for *in camera* inspection. The court noted that the standard for determining whether a traffic stop is pretextual is found in *People v. Guerrieri* (1990), 194 Ill. App. 3d 497, 551 N.E.2d 767, and *United States v. Smith* (11th Cir. 1986), 799 F.2d 704.

We will note at this point that in *Guerrieri* this court held that, in determining whether an investigative stop is invalid as pretextual, the proper inquiry is whether a reasonable officer would have made the seizure in the absence of an illegitimate motive; however, an objectively reasonable stop or other seizure is not invalid solely because the officer acted out of an improper or dual motive. *Guerrieri*, 194 Ill. App. 3d at 501-02, 551 N.E.2d at 770.

The Attorney General filed a motion to reconsider the denial of the motion to quash subpoena, and on May 8, 1992, a hearing was held on the motion to reconsider the court's denial of the motion to quash subpoena. The assistant Attorney General argued that Oliverio stopped defendant after observing two violations of the Illinois Vehicle Code (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 1—100 *et seq.*); therefore, there was a legitimate traffic violation. After the stop was made, defendant consented to the search. He argued to produce the required documents would be burdensome and oppressive based upon the affidavits of James G. Milbrandt, Bureau Chief of the Bureau of Management Information in the Division of State Troopers, Illinois State Police, and Richard V. White, Bureau of Information Services

in the Division of Administration, Illinois State Police. The affidavits had been attached to the motion to reconsider.

Defendant replied that to end the inquiry by determining if the police could have made the traffic stops subjects countless motorists, who technically commit inconsequential traffic violations, to searches and seizures. He argued the test for determining a stop violation of the fourth amendment should be whether a reasonable officer would have made the stop in the absence of some invalid purpose.

On May 15, 1992, the court denied the motion to reconsider the denial of the motion to quash except for limited exceptions not relevant to this appeal.

On June 26, 1992, the assistant Attorney General informed the court that Grimming and the Illinois State Police would not comply with the subpoena. Grimming meant no disrespect to the court but wanted to create an issue for appeal. The court issued a rule to Grimming to show cause why he should not be held in indirect civil contempt for failing to comply with the subpoena *duces tecum.*

On June 30, 1992, a hearing was held on the rule to show cause. On July 7, 1992, the court found that Grimming's refusal to produce the subpoenaed documents effectively defeated and impaired the rights of Perez and that Grimming's refusal to produce the subpoenaed documents obstructed, impeded, and thwarted the administration of justice and defied the process of the court. The court found Grimming to be in indirect civil contempt and fined Grimming $10 per day until he purged himself of contempt by producing the subpoenaed documents.

On March 9, 1992, defendant Raymond Rivera was charged in a four-count criminal information Effingham County No. 92—CF—51 with violating certain sections of the Cannabis Control Act (720 ILCS 550/1 *et seq.* (West 1992)) and with failure to pay the appropriate cannabis tax (35 ILCS 520/10 (West 1992)). The traffic stop of defendant occurred because he was a passenger in a vehicle allegedly going 52 miles per hour in a 45-mile-per-hour construction zone on Interstate 57. The Rivera case mirrored the procedural history of the Perez case; therefore, a detailed recitation of the procedural history of the Rivera case need not be made in this order. On July 7, 1992, the trial court found that Grimming was in indirect civil contempt for failing to produce the subpoenaed documents. Grimming is to be fined $10 per day until he purges himself of contempt by producing the subpoenaed documents.

On January 21, 1992, defendant Terry McCutcheon was charged by criminal information in Effingham County No. 92—CF—24 with one count of unlawful possession of cannabis, more than 30 grams

but less than 500 grams. Testimony at the preliminary hearing indicates that defendant was stopped because McCutcheon was observed driving 68 miles per hour in a 65-mile-per-hour speed zone and leaving his lane of travel and entering onto the right shoulder three times. His attorney filed a motion to suppress evidence, and subpoenas *duces tecum,* similar to those in Perez and Rivera, were issued. The Attorney General on behalf of Grimming and the Illinois State Police filed a motion to quash subpoena which was denied. On September 25, 1992, the trial court found Grimming to be in indirect civil contempt for failing to produce the subpoenaed documents. The court ordered Grimming incarcerated in the county jail until production of the documents is complete.

On appeal, appellant contends that the subpoenas seek irrelevant documents and are unreasonable and oppressive. McCutcheon has not filed a brief in this court. Perez and Rivera contend that the trial court's orders were correct, because their objective in seeking the documents which are the subject of the subpoenas *duces tecum* is to obtain information to support their motions to suppress evidence.

A trial judge has broad discretion in controlling discovery. (*People v. Fairbanks* (1986), 141 Ill. App. 3d 909, 914, 491 N.E.2d 74, 77.) A trial court's discovery ruling will not be overturned unless there is a manifest abuse of discretion. (*Fairbanks,* 141 Ill. App. 3d at 915, 491 N.E.2d at 78.) However, discovery should be denied where there is insufficient evidence that the requested discovery is relevant. (*Fairbanks,* 141 Ill. App. 3d at 914, 491 N.E.2d at 78.) A defendant's discovery request is governed by Supreme Court Rule 412(h), which states:

> "Discretionary Disclosures. Upon a showing of materiality to the preparation of the defense, and if the request is reasonable, the court, in its discretion, may require disclosure to defense counsel of relevant material and information not covered by this rule." (134 Ill. 2d R. 412(h).)

In light of present case law regarding claims of pretextual stops and arrests, this court finds that the documents sought by the defense in this case were immaterial. We, therefore, reverse the orders of the trial court which held appellant in indirect civil contempt.

A pretextual arrest occurs when the police employ an arrest based on probable cause as a device to investigate or search for evidence for which probable cause is lacking. (*United States v. Trigg* (7th Cir. 1989), 878 F.2d 1037, 1039.) The traditional response to this police tactic has been to suppress all evidence derived from the search incident to the pretextual arrest. (*Trigg,* 878 F.2d at 1039; *People v. Alvarez* (1993), 243 Ill. App. 3d 933, 937, 613 N.E.2d 290, 293.) The

tainted evidence is excluded under this theory in order to deter deliberate police misconduct and to prevent law enforcement officers from being rewarded for their subterfuge. (*People v. Anderson* (1988), 169 Ill. App. 3d 289, 294, 523 N.E.2d 1034, 1037-38.) In *United States v. Lefkowitz* (1932), 285 U.S. 452, 76 L. Ed. 877, 52 S. Ct. 420, police officers holding a valid arrest warrant searched the defendants' desks and wastebaskets and seized papers for use as evidence of the crimes for which the defendants were charged. The United States Supreme Court stated "[a]n arrest may not be used as a pretext to search for evidence." (*Lefkowitz*, 285 U.S. at 467, 76 L. Ed. at 884, 52 S. Ct. at 424.) The Court, however, failed to delineate the elements of a pretextual arrest and did not indicate what the appropriate response should be. (See *Trigg*, 878 F.2d at 1039.) The evidence found in the desks and wastebaskets was suppressed as the result of an unreasonable search, violative of the fourth amendment.

■ Defendants contend that they need the documents in preparation for their motion to suppress. In determining whether an investigative stop is invalid as pretextual, the proper inquiry is whether a reasonable officer would have made the seizure in the absence of an illegitimate motive. (*People v. Guerrieri* (1990), 194 Ill. App. 3d 497, 501-02, 551 N.E.2d 767, 770; *Anderson*, 169 Ill. App. 3d at 297, 523 N.E.2d at 1040.) An objectively reasonable stop or other seizure is not invalid solely because the officer acted out of an improper or dual motivation. (*Guerrieri*, 194 Ill. App. 3d at 502, 551 N.E.2d at 770.) "Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." (*Maryland v. Macon* (1985), 472 U.S. 463, 470-71, 86 L. Ed. 2d 370, 378, 105 S. Ct. 2778, 2783, quoting *Scott v. United States* (1978), 436 U.S. 128, 136, 56 L. Ed. 2d 168, 177, 98 S. Ct. 1717, 1722.) "Since evidence seized in violation of the fourth amendment is suppressed in order to deter unlawful *actions* by police officers, the exclusionary rule need not be applied when officers *act* in a lawful manner, even if they possess additional motives which, standing alone, would not be sufficient to justify their conduct." (Emphasis in original.) (*Anderson*, 169 Ill. App. 3d at 297, 523 N.E.2d at 1040.) A traffic violation provides more than a reasonable basis for stopping a vehicle. (*Guerrieri*, 194 Ill. App. 3d at 501, 551 N.E.2d at 769.) So long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest is constitutional. *Trigg*, 878 F.2d at 1041.

In the recent case of *People v. Alvarez* (1993), 243 Ill. App. 3d 933,

613 N.E.2d 290, the defendant was charged with unlawful possession with intent to deliver more than 500 grams of cannabis (Ill. Rev. Stat. 1991, ch. 56$^1$/₂, par. 705(e)). Prior to trial, he filed motions to suppress evidence and for additional discovery. The motions were denied, and following a bench trial, Alvarez was found guilty. On appeal, he only contended that the trial court erred in denying his discovery motion for police logs for the date of defendant's arrest and the preceding year; documents, publications, videotapes, audiotapes, and other materials relied upon by officers in the field, including training documents and other information such as statistics, compiled data, parameters, indicators, and similar information relating to the stopping and searching of drug suspects; and records pertaining to the stopping of vehicles upon Interstate 80 by the police. Alvarez's motion stated that the basis for the request was that "a substantial issue exists herein relating to the pretextual stop of the Defendant, and the information and documents are not only relevant but critical to a comprehensive presentation of the facts relating to said issue." The appellate court found that the initial stop of Alvarez was justified upon the presence of objects hanging from the rearview mirror which materially obstructed the driver's view, and the prosecution presented evidence, which the trial court chose to believe, that Alvarez's car repeatedly weaved and drifted between lanes. The appellate court held that since the police had objectively reasonable bases for stopping the defendant's car, the trial judge properly denied the defendant's discovery requests which were designed to question the officer's subjective motivations in making the stop. *Alvarez*, 243 Ill. App. 3d at 940, 613 N.E.2d at 294.

■ In the case at bar, all three defendants argued to the trial court that the documents sought were necessary to establish whether the stop was a pretextual stop or a traffic stop that reasonably could have been made in the absence of an intention to investigate other criminal activity. In light of present case law regarding claims of pretextual stops and arrests, we find that the documents and items sought by the defendants in these cases were immaterial. (See *Alvarez*, 243 Ill. App. 3d at 937, 613 N.E.2d at 293.) The alleged traffic violations in these cases, if established at the appropriate hearing, provide a reasonable basis for stopping a motor vehicle. (*Guerrieri*, 194 Ill. App. 3d at 501, 551 N.E.2d at 769.) If the traffic violations are not established, then no reason exists to stop the vehicles and it appears the prosecutions would end.

Therefore, the orders of the circuit court holding appellant Grimming in indirect civil contempt are reversed, and the orders denying the motions to quash the subpoenas *duces tecum* are reversed.

No. 91—CF—185 (No. 5—92—0461), Reversed.
No. 92—CF—51 (No. 5—92—0499), Reversed.
No. 92—CF—24 (No. 5—92—0672), Reversed.

LEWIS, P.J., concurs.

JUSTICE GOLDENHERSH, dissenting:
I respectfully dissent. In my opinion the actions of the trial court were appropriate because the information sought by defendants' counsel was relevant to defendants' motion to suppress, obviously part of the general defense mounted in this case.

My disagreement with the majority has two bases. First, a trial court has discretion to order discovery of materials such as this when the question of a prosecutor's exercise of discretion in bringing charges is at issue and inquiry into that issue may reasonably be part of the defense to the specific charges brought. (*People v. Shukovsky* (1988), 128 Ill. 2d 210, 538 N.E.2d 444.) In *Shukovsky* our supreme court upheld the trial court's denial of a motion to quash a subpoena seeking information concerning the State's Attorney's exercise of discretion and charging the defendant. In that particular case the State's Attorney had nol-prossed the same charges for insufficient evidence and then later refiled them.

The relevancy of the materials sought is the second basis of my disagreement with the majority. The fifth district has adopted the test cited in *United States v. Smith* (11th Cir. 1986), 799 F.2d 704, in the case of *People v. Guerrieri* (1990), 194 Ill. App. 3d 497, 551 N.E.2d 767. In *Guerrieri*, our court stated the following:

> "Defendant further contends that stopping him for an alleged traffic violation was merely a pretext to search his vehicle. In determining whether an investigative stop is invalid as pretextual, the proper inquiry is whether a reasonable officer would have made the seizure in the absence of an illegitimate motive. (*United States v. Smith* (11th Cir. 1986), 799 F.2d 704, 708.) However, an objectively reasonable stop or other seizure is not invalid solely because the officer acted out of an improper or dual motivation. (*Smith*, 799 F.2d at 708-09; see also *[People v. ]Assenato* [(1989)], 186 Ill. App. 3d [331,] 338, 542 N.E.2d [457,] 461.) 'Whether a Fourth Amendment violation has occurred "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," [citation] and not on the officer's actual state of mind at the time the challenged action was taken.' *Maryland v. Macon* (1985), 472 U.S. 463, 470-71, 86 L. Ed. 2d 370, 378, 105 S. Ct. 2778, 2783, quoting *Scott v. United States* (1978), 436 U.S. 128, 136, 56 L. Ed. 2d 168, 177, 98 S. Ct.

1717, 1722." *Guerrieri*, 194 Ill. App. 3d at 501-02, 551 N.E.2d at 770.

The case cited with approval by our court, *United States v. Smith*, stated the following:

"By looking to what a reasonable officer *would* do rather than to what an officer validly *could* do, the standard we apply today to determine the validity of an allegedly pretextual investigative stop is supportive of the rationales that make *Terry*-stops [(*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868)] reasonable under the fourth amendment. *Terry*-stops are reasonable not only because of the government's interest in investigating and alleviating officers' suspicions of illegal activity but also because of the limited intrusiveness of such stops. 392 U.S. at 26, 88 S. Ct. at 1882, 20 L. Ed. 2d at 908-09. To maintain this balance between the competing interest of the government and the individual, each *Terry*-stop must be both 'justified at its inception' and 'reasonably related in scope to the circumstances which justified the interference in the first place.' *Terry*, 392 U.S. at 20, 88 S. Ct. at 1879, 20 L. Ed. 2d at 905; *see also United States v. Sharpe*, 470 U.S. 675, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985) (applying *Terry* standard to stop and detention based upon reasonable suspicion of drug possession). If officers were permitted to conduct *Terry*-stops based on what conceivably *could* give rise to reasonable suspicion of minor violations, the necessary connection between a seizure's justification and its scope would inevitably unravel.

\*\*\*

Were we to abandon the rule of [*United States v. Cruz* (5th Cir. 1978), 581 F.2d 535 (*en banc*)]—which, of course, this panel cannot do—police officers could easily make the random, arbitrary stops denounced in *Terry*. With little more than an inarticulate 'hunch' of illegal activity an officer could begin following a vehicle and then stop it for the slightest deviation from a completely steady course. This possibility was denounced more than 30 years ago by the Florida Supreme Court in a case remarkably similar to the present one:

A holding that such a feeble reason would justify a halting and searching would mean that all travelers on the highway would hazard such treatment, for who among them would not be guilty of crossing the center line so much as a foot from time to time. All could, therefore, be subjected to inconvenience, ignominy and embarrassment \*\*\*.

*Collins v. State*, 65 So. 2d 61, 63 (Fla. 1953).

Like the Supreme Court of Florida, we believe that such a result would run counter to our Constitution's promise against unreasonable searches and seizures by law enforcement officials." (Emphasis in original.) *Smith*, 799 F.2d at 711.

Given the standard this court adopted for determining whether a stop is pretextual, the actions of the trial court were correct in its interpretation of the law and not an abuse of discretion. I would therefore affirm.